**In re WEEKLEY HOMES, L.P., Relator.**

No. 08–0836.

Supreme Court of Texas.

Argued March 31, 2009.

Decided Aug. 28, 2009.

Craig T. Enoch, Winstead PC, Austin, TX, Joel Wilson Reese, Winstead PC, Dallas, TX, David Fowler Johnson, Winstead PC, Fort Worth, TX, for Relator.

Christopher H. Rentzel, Robert Marvin Castle III, Bracewell & Guiliani, Dallas, TX, for Real Party in Interest.

Justice O'NEILL delivered the opinion of the Court.

In this mandamus proceeding, we must decide whether the trial court abused its discretion by ordering four of the defendant's employees to turn over their computer hard drives to forensic experts for imaging, copying, and searching for deleted emails. Because the plaintiff failed to demonstrate the particular characteristics of the electronic storage devices involved, the familiarity of its experts with those characteristics, or a reasonable likelihood that the proposed search methodology would yield the information sought, and considering the highly intrusive nature of computer storage search and the sensitivity of the subject matter, we hold that the trial court abused its discretion.

## I. Background

In October 2002, relator Weekley Homes, L.P., a homebuilder, entered into an agreement with Enclave at Fortney Branch, Ltd. (Enclave), a residential real estate developer, to purchase 136 developed lots in a subdivision pursuant to a take-down schedule[1] (the Builder Contract). In November 2004, after Weekley had purchased some of the lots from Enclave pursuant to the Builder Contract, Enclave and HFG Enclave Land Interests, Ltd. (HFG)[2] entered into an agreement whereby Enclave would sell and convey seventy-four of the remaining developed lots to HFG (the Warehouse Contract). Under the Warehouse Contract, Enclave also assigned to HFG its rights to those seventy-four lots under the Builder Contract such that Weekley would be obligated to purchase those lots from HFG.

One day before the Warehouse Contract's execution, Weekley executed a Consent to Assignment and Estoppel Certificate (the Estoppel Certificate), in which Weekley made various express representations, warranties, and covenants to HFG about the state of Enclave's performance under the Builder Contract up to that point. According to HFG, it relied upon the Estoppel Certificate when it agreed to the terms of the Warehouse Contract.

1. In the real estate development context, a take-down schedule is an agreement between a developer and a home builder under which the homebuilder agrees to purchase a number of developed lots over a scheduled period of time. *See, e.g., Medallion Homes, Inc. v. Thermar Inv., Inc.,* 698 S.W.2d 400, 402 (Tex. App.-Houston [14th Dist.] 1985, no pet. h.), *overruled by Ojeda de Toca v. Wise,* 748 S.W.2d 449 (Tex.1988).

2. HFG is a lot warehouser. According to HFG,

   Lot warehousing is a sophisticated financing enterprise wherein a real estate developer (typically a business that obtains acreage, subdivides it, installs streets and utilities, thereby creating lots available for sale to homebuilders) conveys vacant lots to a lot warehouser. In turn, the lot warehouser holds the lots and then sells them to one or more pre-arranged homebuilders. By virtue of this agreement, the developer is assured of having money in hand for the lots on a more immediate basis than it would had it sold the lots over time on a take-down basis to the builders.

Enclave allegedly failed to perform various obligations owed to HFG under the Warehouse Contract, and HFG sued Enclave in August 2006. Two months later, HFG subpoenaed documents from a number of third parties, including Weekley. After reviewing several of the documents Weekley produced, HFG's counsel began asking Weekley about the possible existence of other potentially responsive documents relating to the subdivision. In response, Weekley eventually produced approximately 400 additional pages of documents in March 2007. According to HFG, information contained in the documents led it to believe Weekley had made a number of material misrepresentations in the Estoppel Certificate relating to Enclave's performance under the Builder Contract.

In June 2007, HFG added Weekley as a defendant to its pending suit against Enclave, seeking damages for common law fraud and fraudulent inducement, statutory fraud, fraud by nondisclosure, negligence per se, and negligent misrepresentation. In July and December 2007, HFG served Weekley with requests for production including requests that Weekley produce a broad variety of emails[3] to and from Weekley and its employees relating to Enclave, the subdivision, and the Builder Contract. HFG specifically requested emails between Enclave and Russell Rice (Weekley's Division President), Joe Vastano (Weekley's Area President), Scott Thompson (Weekley's Project Manager for the subdivision), and Biff Bailey (Weekley's Land Acquisitions Manager) (collectively "the Employees"), relating to

Enclave and the Builder Contract. HFG received thirty-one responsive emails, one of which discussed a third-party engineering analysis (the Slope Stability Analysis) predating the Estoppel Certificate and Warehouse Contract and addressing the existence of multiple unsafe subdivision lots that required remedial measures.[4] Weekley produced a copy of the Slope Stability Analysis, but did not produce any additional communications to or from the Employees discussing it. Considering the safety issues HFG contends the Slope Stability Analysis highlighted, and that Weekley allegedly spent $92,000 to remedy those issues, HFG was unconvinced that there was only one email discussing the report.

HFG moved to compel Weekley to "search for any emails stored on servers or back up tapes or other media, [and] any email folders in the email accounts of [the Employees]." At the hearing on HFG's motion, John Burchfield, Weekley's General Counsel, testified that "each [Weekley] employee has an [email] inbox that's limited in size. And once you bump that size limit, you have to start deleting things off the inbox in order to be able to receive any more emails." Burchfield further testified that "[Weekley] forces [employees] to clear out [their] inbox[es] on a regular basis," so that deleted emails will only be saved if an employee "back[s] them up on [the employee's] own personal hard drive somehow." And while deleted emails are saved on backup tapes, they are only retained "[f]or a thirty-day cycle." The trial court denied HFG's motion.

---

**3.** In some requests, Weekley asked for "documents," which the requests defined to include "electronic or email messages." In others, Weekley specifically asked for emails.

**4.** In response to HFG's First Motion to Compel, Weekley contested the relevance of the

Slope Stability Analysis contending it only discussed lots that Weekley had already purchased from Enclave pursuant to the Builder Contract and prior to the Warehouse Agreement. However, Weekley does not request mandamus relief on that basis.

Based upon information learned at the hearing, HFG filed a "Motion for Limited Access to [Weekley's] Computers" directing its discovery efforts at the Employees' hard drives. In essence the motion would, at HFG's expense, allow any two of four named PricewaterhouseCoopers forensic experts to access the Employees' computers "for the limited purpose of creating forensic images of the hard drives." According to the motion, the experts would "make an evidentiary image of the [hard drives] using a procedure that is generally accepted as forensically sound." Once the images are created, the experts would search the images for deleted emails from 2004, the relevant year, containing twenty-one specified terms: slope stability, retaining wall, Holigan, HFG, fence, mow!, landscap!, screening wall, LSI, limited site, Alpha, entry, earnest money, Legacy, defective, lot 1, lot 8, grading, substantial completion, letter of credit, and Site Concrete. Once the responsive documents had been identified, extracted, and copied to some form of electronic media by the experts, Weekley would have the right to review the extracted data

and designate which documents or information [Weekley] claims are not relevant, not discoverable, or are subject to any claim of privilege or immunity from which they are withheld under such claims, identifying such withheld documents by page identification number, directory and subdirectory identification, statement of claimed privilege or immunity from discovery, and brief description of the information in question as is required by Tex.R. Civ. Pro. 193.3.

After reviewing the extracted data, Weekley would be required to furnish HFG with any responsive documents that were not being withheld. According to the Motion, should HFG, its counsel, or the experts incidentally observe privileged or confidential information, the information would be maintained in strict confidence and otherwise valid privileges or confidentiality rights would not be waived. Failure to comply with the order's confidentiality provisions would subject the violator to penalties and contempt of court.

At the hearing on HFG's motion, Weekley complained about the intrusiveness of the suggested protocol, pointing out that the forensic experts would have access to private conversations, trade secrets, and privileged communications stored on the Employees' hard drives. Weekly also complained that requiring the Employees' hard drives to be "taken out of commission" for imaging would be burdensome and disruptive. And Weekley complained that HFG failed to show the feasibility of "obtain[ing] data that may have been deleted in 2004" using the protocol set forth in the Motion.[5]

The trial court granted HFG's motion, and Weekley sought mandamus relief from the court of appeals. In a brief memorandum opinion, the court of appeals denied Weekley's petition. 295 S.W.3d 346. We granted oral argument in this case to determine whether the trial court abused its discretion by allowing forensic experts direct access to Weekley's Employees' electronic storage devices for imaging and searching.

## II. Analysis

### A. Rule 196.4's Application

#### 1. Emails are electronic information

Texas Rule of Civil Procedure 192.3(b) provides for discovery of documents, de-

---

**5.** Weekley does not contend that the relevant computers or hard drives are unavailable, so access to the actual hard drives in use by the Employees during the relevant time period is not an issue.

fined to include electronic information that is relevant to the subject matter of the action. *See* TEX.R. CIV. P. 192.3(b) cmt.— 1999. Rule 196 governs requests for production of documents, and Rule 196.4 applies specifically to requests for production of "data or information that exists in electronic or magnetic form." As a threshold matter, Weekley contends the trial court abused its discretion because HFG did not comply with Texas Rule of Civil Procedure 196.4 governing requests for production of electronic or magnetic data. HFG responds that Rule 196.4 does not apply because deleted emails are simply documents governed by the general discovery rules. According to HFG, Rule 196.4 only applies to spreadsheets and statistics, not emails and deleted emails.

⬛ We see nothing in the rule that would support HFG's interpretation. Emails and deleted emails stored in electronic or magnetic form (as opposed to being printed out) are clearly "electronic information." *See* Conference of Chief Justices, Guidelines for State Courts Regarding Discovery of Electronically–Stored Information v (2006), *available at* http://www.ncsconline.org/images/EDis CCJGuidelinesFinal.pdf. Accordingly, we look to Rule 196.4 in analyzing HFG's requests.

### B. Rule 196.4's Requirements

#### 1. Specificity

⬛ Weekley argues that HFG failed to comply with Rule 196.4 because it never specifically requested production of "deleted emails." Rule 196.4 provides that, "[t]o obtain discovery of data or information that exists in electronic or magnetic form,

the requesting party must specifically request production of electronic or magnetic data and specify the form in which the requesting party wants it produced." TEX.R. CIV. P. 196.4. As we have said, email communications constitute "electronic data," and their characterization as such does not change when they are deleted from a party's inbox. Thus, deleted emails are within Rule 196.4's purview and their production was implied by HFG's request. However, for parties unsophisticated in electronic discovery, such an implication might be easily missed. Rule 196.4 requires specificity, and HFG did not specifically request deleted emails. HFG counters that it did not know how Weekley's computer system and electronic information storage worked, and thus did not know what to ask for. But it is a simple matter to request emails that have been deleted; knowledge as to the particular method or means of retrieving them is not necessary at the requesting stage of discovery. Once a specific request is made the parties can, and should, communicate as to the particularities of a party's computer storage system and potential methods of retrieval to assess the feasibility of their recovery.[6] But even though it was not stated in HFG's written request that deleted emails were included within its scope, that HFG thought they were and was seeking this form of electronic information became abundantly clear in the course of discovery and before the hearing on the motion to compel. The purpose of Rule 196.4's specificity requirement is to ensure that requests for electronic information are clearly understood and disputes avoided. Because the scope of HFG's re-

---

**6.** The federal rules recognize the importance of early communication between parties on how electronic information is stored. *See* FED.R.CIV.P. 16(b), 26(f). While the Texas rules have no counterpart, early discussions between the parties or early discovery directed toward learning about an opposing party's electronic storage systems and procedures is encouraged.

quests was understood before trial court intervention, Weekley was not prejudiced by HFG's failure to follow the rule and the trial court did not abuse its discretion by ordering production of the deleted emails. To ensure compliance with the rules and avoid confusion, however, parties seeking production of deleted emails should expressly request them.

■ Weekley additionally complains that HFG's "Motion for Limited Access to [Weekley's] Computers" is not a permissible discovery device. We agree with HFG, however, that the motion was, in effect, a motion to compel and the trial court properly treated it as such.

## C. The Trial Court Abused Its Discretion in Allowing Access to Weekley's Hard Drives on this Record

### 1. The appropriate procedures under the rules

■ Weekley next contends that, even if a motion to compel may be used to access another party's hard drives, the trial court abused its discretion by permitting the experts to rummage through the Employees' computers in search of deleted emails that may no longer exist. Such an invasive procedure is only permissible, Weekley argues, when the requesting party has produced some evidence of good cause or bad faith, together with some evidence that the information sought exists and is retrievable. According to Weekley, HFG failed to make such a demonstration. HFG responds that inconsistencies and discrepancies in a party's production justify granting access to a party's hard drives. Additionally, HFG claims it was not required to show the feasibility of retrieval because it is well-settled that deleted emails can, at least in some cases, be retrieved from computer hard drives. Once again, we turn to Rule 196.4 for guidance.

When a specific request for electronic information has been lodged, Rule 196.4 requires the responding party to either produce responsive electronic information that is "reasonably available to the responding party in its ordinary course of business," or object on grounds that the information cannot through reasonable efforts be retrieved or produced in the form requested. Once the responding party raises a Rule 196.4 objection, either party may request a hearing at which the responding party must present evidence to support the objection. Tex.R. Civ. P. 193.4(a). To determine whether requested information is reasonably available in the ordinary course of business, the trial court may order discovery, such as requiring the responding party to sample or inspect the sources potentially containing information identified as not reasonably available. *See* Tex.R. Civ. P. 193.4(a); *cf.* Tex.R. Civ. P. 196.7 & cmts.—1999; *accord* Fed.R.Civ.P. 26(b)(2)(b) notes of the advisory committee to the 2006 amendments. The trial court may also allow deposition of witnesses knowledgeable about the responding party's information systems. *See* Tex.R. Civ. P. 195.1. Because parties' electronic systems, electronic storage, and retrieval capabilities will vary in each case, trial courts should assess the reasonable availability of information on a case-by-case basis.

Should the responding party fail to meet its burden, the trial court may order production subject to the discovery limitations imposed by Rule 192.4. If the responding party meets its burden by demonstrating that retrieval and production of the requested information would be overly burdensome, the trial court may nevertheless order targeted production upon a showing by the requesting party that the benefits of ordering production outweigh the costs. Tex.R. Civ. P. 192.4. Like assessing the reasonable availability of information, determining the scope of production may re-

quire some focused discovery, "which may include sampling of the sources, to learn more about what burdens and costs are involved in accessing the information, what the information consists of, and how valuable it is for the litigation in light of information that can be obtained by exhausting other opportunities for discovery." FED. R.CIV.P. 26(b)(2)(b) notes of the advisory committee to the 2006 amendments; *see also* TEX.R. CIV. P. 196.7. To the extent possible, courts should be mindful of protecting sensitive information and should choose the least intrusive means of retrieval. And when the court orders production of not-reasonably-available information, the court "must also order that the requesting party pay the reasonable expenses of any extraordinary steps required to retrieve and produce the information." TEX.R. CIV. P. 196.4.

Because HFG did not initially specifically request deleted emails as Rule 196.4 requires, Weekley had no obligation to object in its response that deleted emails were not "reasonably available ... in its ordinary course of business." *Id.* However, because HFG's motion to compel clarified the scope of its original request, Weekley was required in its response to HFG's motion and at the subsequent hearing to make the Rule 196.4 showing. Our limited record does not reflect whether Weekley met its burden.[7] However, the trial court's ultimate decision to order imaging of the Employees' hard drives and forensic examination implies a finding that the deleted emails were not reasonably available and required extraordinary steps for their retrieval and production. We must decide, then, whether the measures the trial court crafted for retrieving the Employees' deleted emails were proper

under the circumstances presented. Although Rule 196.4 does not provide express guidelines for the manner or means by which electronic information that is not reasonably available in the ordinary course of business may be ordered produced, the federal rules and courts applying them offer some guidance.

## 2. The federal rules

Beginning in 2000, the federal Committee on Rules of Practice and Procedure began intensive work on the subject of computer-based discovery because of growing confusion in the area. *See* Comm. on Rules of Practice and Procedure, Summary of the Report of the Judicial Conference 22 (2005), *available at* http://www. uscourts.gov/rules/Reports/ST09–2005.pdf. The Committee's purpose was to "determine whether changes could be effected to reduce the costs of discovery, to increase its efficiency, to increase uniformity of practice, and to encourage the judiciary to participate more actively in case management when appropriate." *Id.* at 24. In 2005, the Committee proposed amendments to the Federal Rules to better accommodate electronic discovery. *Id.* at 22. The amendments were supported by The American Bar Association Section on Litigation, the Federal Bar Council, the New York State Bar Association Commercial and Federal Litigation Section, and the Department of Justice, and most of the amendments were unanimously approved by the Committee. *Id.* at 25. The amendments were ultimately approved by the Judicial Conference and the United States Supreme Court, and have been in effect since December 1, 2006. Although we have not amended our rules to mirror the federal language, our rules as written are

---

**7.** The court reporter's record from the hearing on HFG's First Motion to Compel is ab-

sent from the record.

not inconsistent with the federal rules or the case law interpreting them.

Under Federal Rule of Civil Procedure 26(b)(2)(B), a trial court may order production of information that is not reasonably available only "if the requesting party shows good cause." In determining whether the requesting party has demonstrated "good cause," the court must consider, among other factors, whether

> the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

FED.R.CIV.P. 26(b)(2)(C)(iii). The Texas rules do not expressly require a "good cause" showing before production of not-reasonably-available electronic information may be ordered, but they do require a trial court to limit discovery when

> the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

TEX.R. CIV. P. 192.4(b). Thus, both the federal rule and ours require trial courts to weigh the benefits of production against the burdens imposed when the requested information is not reasonably available in the ordinary course of business. We see no difference in the considerations that would apply when weighing the benefits against the burdens of electronic-information production; therefore we look to the federal rules for guidance.

Providing access to information by ordering examination of a party's electronic storage device is particularly intrusive and should be generally discouraged, just as permitting open access to a party's file cabinets for general perusal would be. The comments to the federal rules make clear that, while direct "access [to a party's electronic storage device] might be justified in some circumstances," the rules are "not meant to create a routine right of direct access." FED.R.CIV.P. 34 notes of the advisory committee to the 2006 amendments. When allowing such access, the comments to Rule 34 warn courts to "guard against undue intrusiveness." *Id.*

### 3. Federal case law

Since the 2006 amendments to the federal rules were promulgated, federal case law has established some basic principles regarding direct access to a party's electronic storage device. As a threshold matter, the requesting party must show that the responding party has somehow defaulted in its obligation to search its records and produce the requested data. *See The Scotts Co. v. Liberty Mut. Ins. Co.,* Civil Action 2:06–CV–899, 2007 WL 1723509, at *2, 2007 U.S. Dist. LEXIS 43005, at *5 (S.D. Ohio June 12, 2007); *Diepenhorst v. City of Battle Creek,* Case No. 1:05–CV–734, 2006 WL 1851243, at *3, 2006 U.S. Dist. LEXIS 48551, at *10 (W.D. Mich. June 30, 2006) (citing *In re Ford Motor Co.,* 345 F.3d 1315 (11th Cir. 2003)); *Powers v. Thomas M. Cooley Law Sch.,* Case No. 5:05–CV–117, 2006 WL 2711512, at *5, 2006 U.S. Dist. LEXIS 67706, at *14 (W.D.Mich. Sept. 21, 2006). The requesting party should also show that the responding party's production "has been inadequate and that a search of the opponent's [electronic storage device] could recover deleted relevant materials." *Diepenhorst,* 2006 WL 1851243, at *3, 2006 U.S. Dist. LEXIS 48551, at *9 (citing *Simon Prop. Group LP v. mySimon, Inc.,* 194 F.R.D. 639, 640–641 (S.D.Ind.2000)). Courts have been reluctant to rely on

mere skepticism or bare allegations that the responding party has failed to comply with its discovery duties. *The Scotts Co.,* 2007 WL 1723509, at *2, 2007 U.S. Dist. LEXIS 43005, at *6; *Powers,* 2006 WL 2711512, at *5, 2006 U.S. Dist. LEXIS 67706, at *15;[8] *cf. Balfour Beatty Rail, Inc. v. Vaccarello,* Case No. 3:06–CV–551–J–20MCR, 2007 WL 169628, at *3, 2007 U.S. Dist. LEXIS 3581, at *7 (M.D.Fl. Jan. 18, 2007) (denying access to responding party's hard drives where requesting party failed to demonstrate responding party's non-compliance with its discovery duties); *see also McCurdy Group v. Am. Biomedical Group, Inc.,* 9 Fed.Appx. 822, 831 (10th Cir.2001) (noting that skepticism alone is not sufficient to permit direct access to an opponent's electronic storage device).

Even if the requesting party makes this threshold showing, courts should not permit the requesting party itself to access the opponent's storage device; rather, only a qualified expert should be afforded such access, *Diepenhorst,* 2006 WL 1851243, at *2, 2006 U.S. Dist. LEXIS 48851, at *7; *accord In re Honza,* 242 S.W.3d 578, 583 n. 8 (Tex.App.-Waco 2008, pet. denied) (noting that "the expert's qualifications are of critical importance when access to another party's computer hard drives or similar data storage is sought"), and only when there is some indication that retrieval of the data sought is feasible. *See Calyon v. Mizuho Sec. USA Inc.,* 07 Civ. 02241(RO)(DF), 2007 WL 1468889, at *5,

2007 U.S. Dist. LEXIS 36961, at *17–18 (S.D.N.Y. May 18, 2007); *Antioch Co. v. Scrapbook Borders, Inc.,* 210 F.R.D. 645, 652 (D.Minn.2002) (citing *Playboy Enters. v. Welles,* 60 F.Supp.2d 1050, 1055 (S.D.Cal.1999)). Due to the broad array of electronic information storage methodologies, the requesting party must become knowledgeable about the characteristics of the storage devices sought to be searched in order to demonstrate the feasibility of electronic retrieval in a particular case. And consistent with standard prohibitions against "fishing expeditions," *see, e.g., In re CSX Corp.,* 124 S.W.3d 149, 153 (Tex. 2003); *Texaco, Inc. v. Sanderson,* 898 S.W.2d 813, 815 (Tex.1995), a court may not give the expert carte blanche authorization to sort through the responding party's electronic storage device. *See Thielen v. Buongiorno USA, Inc.,* Case No. 1:06–CV–16, 2007 WL 465680, at *2, 2007 U.S. Dist. LEXIS 8998, at *7–8 (W.D.Mich. Feb. 8, 2007). Instead, courts are advised to impose reasonable limits on production. *See In re CSX Corp.,* 124 S.W.3d at 152; *The Scotts Co.,* 2007 WL 1723509, at *2, 2007 U.S. Dist. LEXIS 43005, at *5; *see also Ford,* 345 F.3d at 1317 (noting the importance of establishing protocols for the forensic search of a party's hard drives, such as designating search terms to restrict the search). Courts must also address privilege, privacy, and confidentiality concerns. *Calyon,* 2007 WL 1468889, at *4, 2007 U.S. Dist. LEXIS 36961, at *14; *Frees, Inc. v. McMillian,* Civil Action No.

---

**8.** *See also White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.,* Civil Action No. 07–2319–CM, 2009 WL 722056, at *4, 2009 U.S. Dist. LEXIS 22068, at *13 (D.Kan. Mar. 18, 2009) (allowing direct access where requesting party's expert noted discrepancies in the metadata of certain produced emails); *Matthews v. Baumhaft,* Case No. 06–11618, 2008 WL 2224126, at *2, 2008 U.S. Dist. LEXIS 42396, at *5 (E.D.Mich. May 29, 2008) (allowing direct access upon a

showing of responding party's discovery misconduct); *Ferron v. Search Cactus, L.L.C.,* Case No. 2:06–CV–327, 2008 WL 1902499, at *2, 2008 U.S. Dist. LEXIS 34599, at *8 (S.D.Ohio Apr. 28, 2008) (allowing direct access where responding party "failed to fulfill his 'duty to preserve information because of pending or reasonably anticipated litigation'") (quoting FED.R.CIV P. 37 notes of the advisory committee to the 2006 amendments).

05–1979, 2007 WL 184889, at *3, 2007 U.S. Dist. LEXIS 4343, *9 (W.D.La. Jan. 22, 2007).

Finally, federal courts have been more likely to order direct access to a responding party's electronic storage devices when there is some direct relationship between the electronic storage device and the claim itself. *See Cenveo Corp. v. Slater*, No. 06–CV–2632, 2007 WL 442387, at *2, 2007 U.S. Dist. LEXIS 8281, at *4 (E.D.Penn. Feb. 2, 2007); *Frees*, 2007 WL 184889, at *3, 2007 U.S. Dist. LEXIS 4343, at *9; *Ameriwood Indus., Inc. v. Liberman*, No. 4:06CV524–DJS, 2006 WL 3825291, at *1, 2006 U.S. Dist. LEXIS 93380, at *5 (E.D.Mo. Dec. 27, 2006); *Balboa Threadworks, Inc. v. Stucky*, Case No. 05–1157–JTM–DWB, 2006 WL 763668, at *4, 2006 U.S. Dist. LEXIS 29265, *12 (D.Kan. Mar.24, 2006). For example, in *Ameriwood Industries*, Ameriwood sued several former employees claiming they improperly used Ameriwood's computers, confidential files, and confidential information to sabotage Ameriwood's business by forwarding its customer information and other trade secrets from Ameriwood's computers to the employees' personal email accounts. 2006 WL 3825291, at *1, *3, 2006 U.S. Dist. LEXIS 93380, at *2, *9. Based in part on the close relationship between Ameriwood's claims and the employees' computer equipment, the trial court justified "allowing an expert to obtain and search a mirror image of [the employee] defendants" hard drives. *Id.*, 2006 WL 3825291, at *1, 2006 U.S. Dist. LEXIS 93380, at *6. Similarly, in *Cenveo Corp.*, Cenveo sued several former employees for improperly using its computers, confidential trade information, and trade secrets to divert business from Cenveo to themselves. 2007 WL 442387, at *1, 2007 U.S. Dist. LEXIS 8281, at *1. Borrowing from *Ameriwood*, the district court authorized a similar order "[b]ecause of the close relationship between plaintiff's claims and defendants' computer equipment." *Id.*, 2007 WL 442387, at *2, 2007 U.S. Dist. LEXIS 8281, at *4. Finally, in *Frees*, a former employee was sued for using company computers to remove certain proprietary information. 2007 WL 184889, at *1, 2007 U.S. Dist. LEXIS 4343, at *2. Noting that the employee's computers would be "among the most likely places [the employee] would have downloaded or stored the data allegedly missing," *id.*, 2007 WL 184889, at *2, 2007 U.S. Dist. LEXIS 4343, at *5, the court allowed direct access to the employee's work and home computers. *Id.*

### 4. HFG did not make the necessary showing

In this case, HFG's motion relied primarily upon discrepancies and inconsistencies in Weekley's production. According to HFG, Weekley only produced "a handful of emails from Russell Rice, and one email from Biff Bailey," Weekley's Division President and Land Acquisitions Manager respectively, while producing "no emails from the email accounts of Scott Thompson or Joe Vastano, both of whom … were very involved with the [s]ubdivision." Additionally, HFG expressed concern about the limited number of emails relating to the Slope Stability Analysis it received despite the importance of that report. Beyond Weekley's meager document production, HFG relied upon Burchfield's testimony that Weekley employees do not save deleted emails to their hard drives, and that Burchfield had "no earthly idea … whether [the deleted emails are] something a forensic specialist could go in and retrieve."

From this testimony, the trial court could have concluded that HFG made a showing that Weekley did not search for relevant deleted emails that HFG requested. But it does not follow that a search of

the Employees' hard drives would likely reveal deleted emails or, if it would, that they would be reasonably capable of recovery. HFG's conclusory statements that the deleted emails it seeks "must exist" and that deleted emails are in some cases recoverable is not enough to justify the highly intrusive method of discovery the trial court ordered, which afforded the forensic experts "complete access to all data stored on [the Employees'] computers." The missing step is a demonstration that the particularities of Weekley's electronic information storage methodology will allow retrieval of emails that have been deleted or overwritten, and what that retrieval will entail. A complicating factor is the some two-and-a-half years that passed between the time any responsive emails would have been created and the time HFG requested them. Under these circumstances, it is impossible to determine whether the benefit of the forensic examination the trial court ordered outweighs the burden that such an invasive method of discovery imposed. *Compare Honza,* 242 S.W.3d at 583 n. 8.

### 5. This case differs from *Honza*

We understand the trial court's predicament, as state law in this area is not clearly defined and the parties' discovery postures shed more heat than light upon the situation. That being the case, the trial court apparently followed the protocol set forth in the only Texas case to address a similar situation. *See Honza,* 242 S.W.3d 578. In *Honza,* A & W Development, L.L.C. assigned to Wesley F. Honza and Robert A. Honza the right to purchase a tract of land under a real estate contract. *Id.* at 579. Under the terms of the assignment, A & W retained the right to pur-

chase a portion of the assigned tract for construction of a street. *Id.* According to A & W, an earlier version of the assignment made no mention of a purchase price upon exercise of the right because the consideration negotiated for the partial assignment included what the Honzas should receive for the street. *Id.* When A & W decided to exercise its right, the Honzas demanded that A & W pay additional consideration. *Id.* at 580. A & W sued the Honzas seeking declaratory relief and alleging various theories of recovery. In the course of discovery, the Honzas produced two drafts of the partial assignment in electronic form. *Id.* at 580, 583. However, they did not produce or otherwise make available metadata [9] associated with those documents. *Id.* at 580. The first trial resulted in a mistrial, after which A & W moved to gain access to the Honzas hard drives to obtain the metadata necessary to identify the points in time when the partial assignment draft was modified. *Id.* The trial court granted A & W's motion, crafting a protocol similar to the one ordered in this case. The court of appeals affirmed the trial court's order, *id.* at 579, and we denied mandamus relief.

Despite the undeniable similarities between the *Honza* order and the one presented here, there are several important distinctions concerning the contexts in which the two orders were granted. First, in *Honza,* A & W sought metadata associated with two documents that had already been shown to exist; indeed, the Honzas produced those documents in electronic form in response to discovery requests propounded before the first trial. *Id.* at 580, 583. Because the Honzas were required to preserve that evidence once it had been requested, there was a reason-

---

9. According to the federal rules advisory committee, metadata is "[i]nformation describing the history, tracking, or management of an electronic file." Fed.R.Civ.P. 26(f) notes of the advisory committee to the 2006 amendments.

able likelihood that a search of the Honzas' computers would reveal the information A & W sought. In this case, on the other hand, the potential for successful recovery of the Employees' deleted emails over a two-and-a-half-year period is much less clear.

Moreover, in *Honza* there was a direct relationship between the hard drives sought and A & W's claims. As the court of appeals noted, identification of the points in time when the partial assignment draft was modified directly concerned "the issue of whether [the Honzas] altered the partial assignment after the parties concluded their agreement but before the document was presented for execution." *Id.* at 580. In contrast, although the deleted emails HFG seeks in this case might reveal circumstantial evidence that the representations Weekley made in the Estoppel Certificate were misleading, there is no claim that the Estoppel Certificate itself was tampered with. While we recognize that a more tenuous link between the electronic storage device and the claim itself is not dispositive, it is a factor trial courts should consider.

Finally, in *Honza* there was extensive testimony from A & W's expert about his experience and qualifications before access to the Honzas' computers was ordered. *Id.* at 583 n. 8. Although Weekley does not directly challenge the qualifications of HFG's forensic experts, nothing was presented to show that the experts were qualified to perform the search given the particularities of the specific storage devices at issue, or that the search methodology would likely allow retrieval of relevant deleted emails. Absent some indication that the experts are familiar with the particularities of the Employees' hard drives, that they are qualified to search those hard drives, and that the proposed methodology for searching those hard drives is reason-

ably likely to yield the information sought, *Honza* does not support the trial court's order. We conclude that by ordering forensic examination of Weekley's hard drives without such information, the trial court abused its discretion. *See In re CSX Corp.*, 124 S.W.3d at 152; *In re Am. Optical Corp.*, 988 S.W.2d 711, 714 (Tex.1998).

Because the trial court abused its discretion by granting HFG's motion without the requisite showing, we need not reach Weekley's alternative arguments that the search terms the trial court ordered are overly broad, or that the trial court's order improperly requires Weekley to create the equivalent of a "privilege log" as to irrelevant documents that the search might produce. However, because trial courts should be mindful of protecting sensitive information and utilize the least intrusive means necessary to facilitate discovery of electronic information, the trial court should consider these arguments on remand.

## D. Summary of Rule 196.4 Procedure

■ A fundamental tenet of our discovery rules is cooperation between parties and their counsel, and the expectation that agreements will be made as reasonably necessary for efficient disposition of the case. TEX.R. CIV. P. 191.2. Accordingly, prior to promulgating requests for electronic information, parties and their attorneys should share relevant information concerning electronic systems and storage methodologies so that agreements regarding protocols may be reached or, if not, trial courts have the information necessary to craft discovery orders that are not unduly intrusive or overly burdensome. The critical importance of learning about relevant systems early in the litigation process is heavily emphasized in the federal rules. Due to the "volume and dynamic nature of electronically stored infor-

mation," failure to become familiar with relevant systems early on can greatly complicate preservation issues, increase uncertainty in the discovery process, and raise the risk of disputes. FED.R.CIV.P. 26(f) notes of the advisory committee to the 2006 amendments.

■■■■ With these overriding principles in mind, we summarize the proper procedure under Rule 196.4:

— the party seeking to discover electronic information must make a specific request for that information and specify the form of production. TEX.R. CIV. P. 196.4.

— The responding party must then produce any electronic information that is "responsive to the request and . . . reasonably available to the responding party in its ordinary course of business." *Id.*

— If "the responding party cannot—through reasonable efforts—retrieve the data or information requested or produce it in the form requested," the responding party must object on those grounds. *Id.*

— The parties should make reasonable efforts to resolve the dispute without court intervention. TEX.R. CIV. P. 191.2.

— If the parties are unable to resolve the dispute, either party may request a hearing on the objection, TEX.R. CIV. P. 193.4(a), at which the responding party must demonstrate that the requested information is not reasonably available because of undue burden or cost, TEX.R. CIV. P. 192.4(b).

— If the trial court determines the requested information is not reasonably available, the court may nevertheless order production upon a showing by the requesting party that the benefits of production outweigh the burdens imposed, again subject to Rule 192.4's discovery limitations.

— If the benefits are shown to outweigh the burdens of production and the trial court orders production of information that is not reasonably available, sensitive information should be protected and the least intrusive means should be employed. TEX.R. CIV. P. 192.6(b). The requesting party must also pay the reasonable expenses of any extraordinary steps required to retrieve and produce the information. TEX.R. CIV. P. 196.4.

— Finally, when determining the means by which the sources should be searched and information produced, direct access to another party's electronic storage devices is discouraged, and courts should be extremely cautious to guard against undue intrusion.

### E. Is Mandamus Appropriate?

■■■■ Mandamus relief is available when the trial court compels production beyond the permissible bounds of discovery. *See Am. Optical,* 988 S.W.2d at 714 (no adequate appellate remedy existed where the trial court ordered overly broad discovery). Intrusive discovery measures—such as ordering direct access to an opponent's electronic storage device—require, at a minimum, that the benefits of the discovery measure outweigh the burden imposed upon the discovered party. TEX.R. CIV. P. 196.4, 192.4. *In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 135–36 (Tex.2004). "If an appellate court cannot remedy a trial court's discovery error, then an adequate appellate remedy does not exist." *In re Dana Corp.,* 138 S.W.3d 298, 301 (Tex.2004).

■■■ In this case, HFG failed to make the good-cause showing necessary to justify the trial court's order. The harm

Weekley will suffer from being required to relinquish control of the Employees' hard drives for forensic inspection, and the harm that might result from revealing private conversations, trade secrets, and privileged or otherwise confidential communications, cannot be remedied on appeal. *See Walker v. Packer*, 827 S.W.2d 833, 843 (Tex.1992) (noting that a party will not have an adequate remedy by appeal when a trial court's order "imposes a burden on the producing party far out of proportion to any benefit that may obtain to the requesting party") (citing *Sears, Roebuck & Co. v. Ramirez*, 824 S.W.2d 558 (Tex. 1992)); *Gen. Motors Corp. v. Lawrence*, 651 S.W.2d 732, 733 (Tex.1983). Accordingly, Weekley is entitled to mandamus relief.

### III.   Conclusion

We conditionally grant the writ of mandamus and order the trial court to vacate its Order. We are confident the trial court will comply, and our writ will issue only if it does not. We note that HFG is not precluded from seeking to rectify the deficiencies we have identified.