**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00034-CV**

_____

**IN RE THE MEDICAL CENTER OF SOUTHEAST TEXAS, LP D/B/A THE MEDICAL CENTER OF SOUTHEAST TEXAS, STEWARD HEALTH CARE SYSTEM LLC, AND STEWARD HEALTH CARE HOLDINGS LLC**

**Original Proceeding**
**58th District Court of Jefferson County, Texas**
**Trial Cause No. 23DCCV1824**

**MEMORANDUM OPINION**

The underlying matter involves a dispute over unpaid invoices. The invoices pertain to services allegedly provided by HNI Physician Services of Texas, Inc., a provider of healthcare professionals, and HNI MSO, Inc. (hereinafter collectively HNI). HNI contends they provided healthcare professionals to The Medical Center of Southeast Texas, LP d/b/a The Medical Center of Southeast Texas (hereinafter The Medical Center), a hospital located in Port Arthur, Texas, and that they were not paid. HNI contends that Steward Health Care System LLC and Steward Health Care

1

Holdings LLC (hereinafter collectively Steward), are "the parent companies" of The Medical Center, and that Steward promised it would pay the outstanding invoices owed by The Medical Center after Steward completed the sale of certain out-of-state hospitals. In the trial court, the trial court ordered Relators, The Medical Center and Steward, to produce documents relating to Steward's sale of the out-of-state hospitals to unrelated third parties. We stayed the contested portion of the trial court's order and obtained a response from the Real Parties in Interest, HNI.

Background

When the dispute arose, HNI MSO, Inc. was the exclusive provider of hospital management services pursuant to a Management Agreement with The Medical Center of Southeast Texas, LP, and HNI Physician Services of Texas, Inc. was the hospital's exclusive provider of hospitalist services pursuant to a Professional Services Agreement with The Medical Center of Southeast Texas, LP. On October 9, 2023, The Medical Center gave notice of termination of the Professional Services Agreement effective January 8, 2024. Eight days later, HNI gave notice of breach of both the Professional Services Agreement and the Management Agreement and demanded immediate payment of $484,297.17.

HNI filed the underlying lawsuit in December 2023, asserting claims against The Medical Center and Steward for breach of the Professional Services Agreement and the Management Agreement, unjust enrichment, fraud, and negligent

2

misrepresentation. HNI alleged that The Medical Center failed to provide 120 days' notice of termination as required by the Professional Services Agreement. HNI alleged that The Medical Center failed to pay invoices for services that were properly provided and invoiced, and HNI estimated the total amount that would be owed when the contracts terminated the following month would be $2,334,808.93. HNI alleged that negotiations between HNI and Steward's corporate representatives began in January 2023 and continued until October 20, 2023. HNI alleged that Steward's representative promised a weekly payment plan and informed HNI that it would fully catch up on The Medical Center's payment obligations upon the pending sale of several Steward-owned hospitals in Utah. HNI alleged that under the arranged payment plan HNI received the initial payment of $800,000 and the first two weekly installments of $500,000 and $400,000, but Steward underpaid subsequent installments and then ceased making payments altogether until HNI sent Steward a Notice of Delinquent Accounts on May 9, 2023. HNI alleged that in August 2023 Steward's corporate representatives participated in multiple telephone calls regarding Steward's progress on making two $550,000 payments, but HNI received only $484,000 on September 18, 2023. HNI alleged that the following day, Steward's Regional President for Texas and Louisiana committed Steward to a payment plan to include three weekly payments of $500,000 and a $4,000,000 lump sum payment, which would be issued shortly after Steward closed on a new credit

facility on October 9, 2023. According to HNI, the Regional President "again reiterated Steward's promise to catch up on payments as soon as Steward closed on pending asset sales[,]" but Steward made only two payments of $400,000 in September 2023. According to HNI, "Steward went silent after receiving a Notice of Breach on October 17, 2023."

In its original petition, HNI requested a writ of attachment of unspecified assets arguing that the defendants owe the plaintiffs for property obtained under false pretenses. *See* Tex. Civ. Prac. & Rem. Code Ann. § 61.002(9). HNI asked the trial court to order Steward to deposit funds into the registry of the court for two reasons: (1) because ownership of funds received from third-party payors for services provided by HNI is disputed; and (2) because Steward is overwhelmingly likely to become insolvent due to numerous pending lawsuits filed by HNI and others against Steward and its affiliates. HNI asked the trial court to issue an injunction under the Texas Uniform Fraudulent Transfer Act because HNI has a claim against Steward, Steward committed fraud by inducing HNI to continue providing services with no intent to pay for those services, and Steward received substantial payments in exchange for those services and subsequently Steward refused to pay HNI for those same services while falsely claiming that HNI would be paid from proceeds of the sale of Steward's Utah hospitals.

Discovery Dispute

HNI requested expedited discovery to prepare for a temporary injunction hearing. Relators objected to HNI's request for expedited discovery because HNI was merely speculating that Steward might be unable to pay a judgment which had not even been issued. Relators argued HNI was not entitled to a temporary injunction of expedited discovery for the following four reasons: (1) the harm is capable of monetary valuation and may be remedied through money damages; (2) a writ of attachment would be inappropriate because HNI provided only services and Relators obtained no property from HNI; (3) ordering a deposit of funds into the registry of the court is unwarranted because Steward owns the funds from the sale of the out-of-state hospitals outright; and (4) HNI failed to allege that Relators committed a transfer, fraudulent or not.

Relators also complained that HNI's discovery requests are overly broad, require production of documents and corporate-representative depositions of parties with whom HNI has no relationship, and seek privileged and confidential investment and financial documents. Relators also complained the financial records exchanged between their subsidiaries are protected as trade secrets.

The trial court ordered Relators to produce: (1) "Contracts for the sale of hospitals owned by Steward Health Care System, LLC, and/or Steward Health Care Holdings, LLC, in the State of Utah, for the period January 1, 2023, through the

present[;]" (2) "Closing documents for the sale of hospitals owned by Steward Health Care System, LLC, and/or Steward Health Care Holdings, LLC, in the State of Utah, for the period January 1, 2023, through the present[;]" and (3) "Documents reflecting the funds generated by the sale of hospitals owned by Steward Health Care System, LLC, and/or Steward Health Care Holdings, LLC, in the State of Utah, for the period January 1, 2023, through the present, including documents reflecting the amount of funds obtained in connection with the sale and the disposition of those funds (e.g., how those funds were allocated or otherwise used after closing)."[1]

Relators asked the trial court to reconsider its discovery order. In the motion to reconsider, Relators asserted that the sales contracts, closing documents, and documents reflecting the funds generated by the sales of the Utah hospitals are confidential and sensitive documents regarding transactions between the alleged debtor's parent companies and wholly unrelated third parties and are irrelevant because they have no bearing on the injunctive relief requested and no tendency to make any fact related to HNI's underlying claims more or less probable. Relators noted that HNI had not alleged that a transfer occurred between The Medical Center and the parent companies. Relators asserted that a confidentiality clause in the purchase agreement required the terms and status of the purchase agreement and

---

[1] Two additional production categories and an expedited discovery schedule were contained in the order but are not challenged in the mandamus petition.

other transaction documents, the contemplated transactions, and the identity of the parties and guarantors remain confidential and not subject to disclosure except in an action or proceeding brought by a party or guarantor in pursuit of its rights or in exercise of its remedies under the purchase agreement. Relators argued Steward could not disclose any of the confidential or sensitive information in the HNI lawsuit, which does not assert rights or remedies under the Utah transactions. According to Steward, these confidential and sensitive documents provide no information regarding the merits of whether a writ of attachment should attach to any of Steward's assets or whether Steward should be ordered to place money into the registry of the Court and would not provide evidence regarding an alleged fraudulent transfer from The Medical Center to either parent company. The trial court denied the motion to reconsider, and Relators sought mandamus relief in this Court.

## Mandamus Standard

Generally, the trial court has discretion regarding the scope of discovery. *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding). If the trial court commits a clear abuse of discretion and the relator lacks an adequate remedy at law, however, the appellate court may grant mandamus relief to correct a discovery order. *Id.* A trial court abuses its discretion when its ruling is so arbitrary and unreasonable that it constitutes a clear and prejudicial error of law. *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003) (orig. proceeding). A trial court has no

7

discretion in determining what the law is or applying the law to the facts. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). "Mandamus relief is available when the trial court compels production beyond the permissible bounds of discovery." *In re Weekley Homes, L.P.*, 295 S.W.3d 309, 322 (Tex. 2009) (orig. proceeding). "If an appellate court cannot remedy a trial court's discovery error, then an adequate appellate remedy does not exist." *In re Dana Corp.*, 138 S.W.3d 298, 301 (Tex. 2004) (orig. proceeding). For instance, appeal is not an adequate remedy when a discovery order compels a party to reveal privileged information or trade secrets or when a discovery order compels the production of patently irrelevant documents imposes a disproportionate burden on the producing party. *In re Colonial Pipeline Co.*, 968 S.W.2d at 941.

Abuse of Discretion

In the mandamus petition, Relators argue the trial court abused its discretion by signing an order that requires them to produce "sensitive and confidential information about transactions between wholly unrelated third parties and the alleged debtor's parent companies[.]" In response to the mandamus petition, HNI argues the documents are relevant because in February 2023, Steward's corporate representatives agreed to a payment plan to keep HNI from pulling its providers out of Steward's hospitals in Texas and Louisiana, states in which HNI is the exclusive provider of a variety of healthcare providers and administrators, then the parent

8

companies reneged on its promise to make payments to HNI after Steward closed the sale of five hospitals it owned in Utah in May 2023.

Relators argue the documents related to the transaction in Utah are not discoverable because they are not relevant to a claim that The Medical Center made a fraudulent transfer to its parent companies, would not demonstrate that The Medical Center is insolvent and unable to pay HNI's invoices, do not establish HNI's entitlement to any proceeds from the Utah transactions, and do not prove the merits of a right to a writ of attachment or a deposit into the registry of the court. HNI alleges it is entitled to be paid by the parent companies because the parent companies failed to pay HNI as promised. HNI contends the documents associated with the transaction in Utah are therefore relevant to its request for injunctive relief to preserve the specific assets that were generated in Steward's transaction that involved the five hospitals in Utah. That said, HNI has not alleged that the Utah assets belong to HNI or that HNI has a valid lien or other perfected security interest in the Utah hospitals or the proceeds from their sale. Accordingly, we conclude the trial court abused its discretion by ordering production of documents that are not relevant to the subject matter of the pending action. *See In re Nat'l Lloyds Ins. Co.*, 507 S.W.3d 219, 223-24 (Tex. 2016) (orig. proceeding); *see also* Tex. R. Civ. P. 192.3(a).

## Lack of Adequate Remedy by Appeal

To be entitled to mandamus relief, Relators must also show that they lack an adequate remedy by appeal. "A discovery order that compels production beyond the rules of procedure is an abuse of discretion for which mandamus is the proper remedy." *In re Nat'l Lloyds Ins. Co.*, 449 S.W.3d 486, 488 (Tex. 2014). We conclude Relators lack an adequate remedy at law because complying with the discovery order would require Steward to produce documents that are subject to a non-disclosure agreement with a third party. *See In re Weekley Homes, L.P.*, 295 S.W.3d at 322 (intrusive discovery measures require that the benefits of the discovery outweigh the burden imposed on the discovered party); *In re Ford Motor Co.*, 211 S.W.3d 295, 298 (Tex. 2006) (orig. proceeding) (appeal is inadequate when a trial court erroneously orders the production of confidential information).

We lift our stay order of January 25, 2024, and we conditionally grant the petition for a writ of mandamus. We are confident that the trial court will vacate the part of its order of January 16, 2024, that required Relators to produce contracts for the sale of hospitals in Utah, closing documents for the sale of hospitals in Utah, and documents reflecting the funds generated by the sale of those hospitals. The writ shall issue only if the trial court fails to comply.

PETITION CONDITIONALLY GRANTED.

PER CURIAM

Submitted on February 5, 2024
Opinion Delivered April 4, 2024

Before Golemon, C.J., Horton and Johnson, JJ.