

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00692-CV
_____

IN RE PHYLLIS MICHELLE WRIGHT AND ZANE WRIGHT, AS THE
EXECUTOR OF THE ESTATE OF KIMBERLY WRIGHT, Relators

---

Original Proceeding
89th District Court of Wichita County, Texas
Trial Court No. DC89-CV2024-0924

---

Before Kerr, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

## I. Introduction

In July 2022, Kimberly Wright was hit by a forklift at her job site and later died from her injuries. Relators Phyllis Michelle Wright and Zane Wright, as the executor of Kimberly's estate, sued various real parties in interest (RPIs), many of whom have been trying since then to obtain Kimberly's cell-phone information to ascertain whether she was using a cell phone at the time of the accident. Relators have objected to the overbreadth of these discovery requests and have repeatedly contended that the RPIs have failed to meet their burden under the requirements of *In re Kuraray America, Inc.*, 656 S.W.3d 137 (Tex. 2022) (orig. proceeding), discussed below.

After the trial court denied relators' motion to quash subpoenas duces tecum sent by some of the RPIs to AT&T and T-Mobile and ordered that their access to Kimberly's cell-phone data would be limited "to the 24 hours preceding the incident that makes the basis of this suit," relators filed this petition for writ of mandamus. In two issues, relators assert that the trial court abused its discretion by denying their motion to quash, by allowing the collection of Kimberly's cell-phone data, and by ordering her cell-phone data to be discoverable for twenty-four hours before the accident. They also complain that the trial court's order "is silent on any procedure restricting the collection of Kimberly's . . . private photos, text message content, financial information and/or any other data unrelated to the use of the phone at the time of the incident." And they point out that a discovery order compelling

2

"production beyond the rules of [civil] procedure is an abuse of discretion for which mandamus is the proper remedy." *See id.* at 142 (quoting *In re Nat'l Lloyds Ins.*, 449 S.W.3d 486, 488 (Tex. 2014) (orig. proceeding)).

Because relators' mandamus record[1] reveals an abuse of discretion for which no adequate appellate remedy exists, *see id.*, we conditionally grant partial relief, vacate the order's overbroad temporal limit, and remand with instructions for the trial court to more narrowly tailor its order for access to Kimberly's cell-phone data.

## II. Discovery of Cell-Phone Data

Trial courts have broad discretion to decide whether to permit or deny discovery. *In re K & L Auto Crushers, LLC*, 627 S.W.3d 239, 247 (Tex. 2021) (orig. proceeding). In determining whether the trial court has abused its discretion, we may not substitute our judgment for the trial court's determination of factual or other discretionary matters. *In re State Farm Lloyds*, 520 S.W.3d 595, 604 (Tex. 2017) (orig. proceeding). But because a trial court has no discretion in determining what the law is or applying it, we review its decisions on questions of law and application-of-law-to-fact questions much less deferentially. *Id.* Ordering discovery that exceeds what our procedural rules permit is an abuse of discretion. *In re Off. of Att'y Gen.*, 702 S.W.3d 360, 364 (Tex. 2024) (orig. proceeding); *see K & L Auto Crushers, LLC*, 627 S.W.3d at

---

[1]The day after relators filed their petition, we requested a response from RPIs. *See* Tex. R. App. P. 52.8(b) (providing that if the court is of the tentative opinion that relator is entitled to the relief sought, the court must request a response if one has not been filed). RPIs' response was filed late and provides no justification under the *Kuraray* standard for the twenty-four-hour time frame permitted by the trial court.

252 (stating that discovery requests and orders are overbroad if they are not properly tailored with regard to time, place, or subject matter).

The supreme court has identified key principles to guide the management of cell-phone-data discovery. *See Kuraray Am., Inc.*, 656 S.W.3d at 142. Specifically, to be entitled to production of cell-phone data: (1) The party seeking it must allege or provide some evidence of cell-phone use by the person whose data is sought at a time when it could have been a contributing cause of the incident on which the claim is based; (2) If the party seeking discovery meets this initial burden, the trial court may order production of cell-phone data if its temporal scope is tailored to encompass *only* the period in which the cell-phone use could have contributed to the incident; and (3) If the initial production indicates that cell-phone use could have contributed to the incident, then a trial court may consider whether additional discovery regarding cell-phone use beyond that time frame may be relevant. *Id.*

Long before the supreme court specifically addressed the production of cell-phone data in *Kuraray*, it addressed the need to guard against undue intrusion in the production of electronic information. *See In re Weekley Homes, L.P.*, 295 S.W.3d 309, 322 (Tex. 2009) (orig. proceeding). In *Weekley Homes*, the supreme court emphasized that "sensitive information should be protected[,] and the least intrusive means should be employed." *Id.* at 322–23 (granting relief when "the harm that might result from revealing private conversations, trade secrets, and privileged or otherwise confidential communications[] cannot be remedied on appeal").

4

## A. Background

### 1. Mandamus record documents

The mandamus record before us contains conflicting information about whether Kimberly was using her cell phone at the time of the accident. A January 20, 2023 OSHA citation stated, "There is a video of the incident, but the footage captured does not *clearly* show the employee using her cell phone." [Emphasis added.] The citation also stated, "During the investigation, NO cell phone was present or found." In September 2025, RPIs listed Chance Pringle, the forklift driver, and Patrick Herrian, a supervisor, in their disclosures as persons expected to testify about Kimberly's use of a cell phone or headphones at the time of her death.[2]

In October 2025, RPIs sent two notices of subpoena duces tecum—one to AT&T and the other to T-Mobile—seeking "[a]ny and all call records from any cell phone(s) or mobile devices associated with Kimberly Dawn Wright *from July 1, 2022 until August 1, 2022*, including but not limited to" two cell-phone numbers.[3] [Emphasis added.] From those same two specific cell-phone numbers—but "not limited to" them—RPIs also sought "[a]ny and all text message[s] . . . from *July 1, 2022 until August 1, 2022*," and "any and all records demonstrating usage/data from any cell phone(s) or mobile devices associated with Kimberly Dawn Wright *from July 1,*

---

[2]Pringle and Herrian were subsequently deposed, but not before RPIs sent their subpoenas duces tecum at issue here.

[3]In the interest of the parties' privacy, we do not list the requested cell-phone numbers.

*2022 until August 1, 2022*, including but not limited to" the two specific cell-phone numbers. [Emphases added.]

Relators then filed their motion to quash based on overbreadth and sought a protective order. They argued that RPIs had not met their burden under *Kuraray* but that, even if they had, "the relevant time frame would be 15 minutes before the incident until the incident." In their response to relators' motion, RPIs pointed out that they had previously tried to obtain more narrow discovery, "including limiting the time frame as the one-hour period of the 30 minutes immediately preceding and immediately following the time of the accident."

Pringle and Herrian were deposed after RPIs issued their subpoenas but before the trial court's ruling on the motion to quash. In the deposition excerpts provided in the mandamus record before us, Pringle testified that he had not noticed that his forklift had hit Kimberly until she said "help," and he did not mention seeing her with a cell phone. His cell phone had been in his pocket, and after dismounting the forklift, he stepped away and called for help. Herrian, on the other hand, testified that there had been a cell phone on the floor "a ways away"—more than ten feet—from Kimberly after the accident. The trial court heard relators' motion to quash approximately ten days after the depositions.

## 2. Hearing and order

At the hearing, relators argued that RPIs failed to meet the burden under *Kuraray* to show that Kimberly had been using the cell phone at the time and that the

cell phone had contributed to the incident, directing the court to Pringle's and Herrian's testimonies[4] and a "still shot photo from the surveillance video . . . approximately 30 to 35 seconds before the incident occurred" as being insufficient to support proof that she had been using her cell phone. RPIs' counsel countered that the photographic evidence plus Herrian's confirmation that a phone had been seen at the scene was "enough to put this cell phone at issue here."

The record contains a copy of the challenged screenshot—date and time-stamped July 30, 2022, 13:00:28—which RPIs attached to their response to the motion to quash. The zoomed-in portion of the screenshot is blurry, easily lending itself to either party's interpretation. At the hearing, RPIs' counsel acknowledged that "it is hard to see," but that "there's at least an indication that the left hand is cocked up with something at her ear." RPIs' counsel stated that the screenshot was "maybe 10 seconds before the accident." RPIs' counsel also informed the trial court, "We've asked for the cell phone. [Relators] have indicated they can't find it," and he stated, "There wouldn't be subpoenas to third-parties if [relators] had produced these records in a tailored fashion, but they haven't done it yet."

RPIs' counsel also asserted—contrary to the broad requests in the subpoenas duces tecum—"We don't want her personal data. We don't want her photos. What

---

[4]Relators' counsel informed the trial court that Pringle's transcript was not yet ready but that Herrian's transcript had been received that morning, and he read the portion about a cell phone "a ways away" and more than ten feet away, into the record at the hearing.

we want to know is whether she was on this phone at the time of the accident." He further argued, "We know the messages she sent and calls she made three days before the accident are not relevant. What is relevant to us is the time surrounding the accident and confirming whether or not she was on the cell phone." He stated that what RPIs wanted was call logs showing data usage and text message logs "showing a time stamp and a number that the text message might have been sent to," but "not [the] substance of the text messages."

Relators' counsel responded that RPIs' request was overbroad in that their subpoenas had asked for an entire month of Kimberly's cell-phone data, when "[t]hey don't need to know what she was doing on July 1st," and that she had "all kinds of things on her phone that are personal that . . . [had nothing] to do with this incident at all." The trial court asked RPIs' counsel whether the subpoenas would have been sought if relators had produced the cell phone, and RPIs' counsel replied, "No. We would probably be here arguing about what type of forensic examination should be done on the phone, but we would not have gone to . . . the cell phone providers to try to get data that we can get from the phone."

As the hearing concluded, after the trial court denied relators' motion, relators' counsel responded, "Are you gonna allow them to get a whole month?" The trial court replied, "It should be narrowly tailored. I don't see why they need more than 24 hours prior to the accident. . . . I don't know why they would need six hours prior to the accident, but I'd say no more than 24 hours before the accident."

The trial court's order denying relators' motion ordered Kimberly's cell-phone-data production to be "limited in time to the 24 hours preceding the incident that makes the basis of this suit."

## B. Application

Relators complain that the trial court ignored the *Kuraray* guidelines and "allowed too broad of a time period for which cell phone records may be sought and obtained" despite its acknowledgment that twenty-four hours—or even six hours—before the accident would be too broad.

Based on *Kuraray*'s principles set out above, there is some evidence from which the trial court could have reasonably concluded that Kimberly might have been using a cell phone at the time of the accident and that it could have been a contributing cause of the accident based on the screenshot from the surveillance video and Herrian's testimony. *See Kuraray*, 656 S.W.3d at 142 (stating that the trial court may order production after the seeking party alleges or provides some evidence of cell-phone use by the person whose data is sought at a time when it could have been a contributing cause). We overrule relators' first issue.

However, contrary to *Kuraray*'s principles, the allowable time frame for the requested data set out in the trial court's order was overbroad, and the order did not provide for the protection of sensitive information. *See id.* (stating that production may be ordered if the temporal scope is tailored to encompass only the period in which the cell-phone use could have contributed to the incident); *Weekley Homes*, 295

9

S.W.3d at 322 (requiring protection of sensitive information).  That is, the trial court noted at the hearing that it did not know why RPIs would "need six hours prior to the accident," and RPIs' counsel at the hearing acknowledged that the only time in issue was that surrounding the accident and stated in their response to the motion to quash that they only needed "the one-hour period of the 30 minutes immediately preceding and immediately following the time of the accident."  And the order contained no limits on the type of cell-phone data RPIs sought in their subpoenas.  Accordingly, the trial court abused its discretion when it granted access to the "24 hours preceding" the accident and failed to add any sort of protective limits to the information sought. We sustain relators' second issue.

### III.  Conclusion

Having sustained relators' second issue, we conditionally grant partial relief and remand the case to the trial court to comply with *Kuraray* by narrowing the access period to reflect the crucial minutes before the accident.  *See* 656 S.W.3d at 142; *see also In re Mesilla Valley Transp.*, No. 04-23-01067-CV, 2024 WL 2034732, at *6 (Tex. App.—San Antonio May 8, 2024, orig. proceeding) (applying *Kuraray* and granting relief from overbroad order when requesting party failed to establish why he needed cell-phone data from four hours before the collision).

We further direct the trial court to limit the order to exclude the items that RPIs' counsel stated they were not pursuing, contrary to their subpoenas' broad requests—Kimberly's personal data, photos, and the contents of text messages, and

10

messages and calls outside of "the time surrounding the accident"—to comply with the supreme court's *Weekley Homes* requirements. *See* 295 S.W.3d at 322; *see also Mesilla Valley Transp.*, 2024 WL 2034732, at *7 (granting relief when discovery order "fail[ed] to incorporate adequate protections for [the cell-phone owner's] privacy interests"); *In re Huang*, No. 01-22-00594-CV, 2023 WL 8262837, at *7 (Tex. App.—Houston [1st Dist.] Nov. 30, 2023, orig. proceeding) (mem. op.) (granting relief when trial court's order failed "to include limitations as to temporal scope of production of cell phone data and protection of confidential, sensitive, or personal data"). The writ will issue only if the trial court fails to comply with our instructions.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered:  January 22, 2026

11