**Petition for Writ of Mandamus Conditionally Granted and Opinion filed June 21, 2018.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-18-00191-CV

---

## IN RE METHODIST PRIMARY CARE GROUP AND TMH PHYSICIAN ORGANIZATION, Relators

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**234th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2015-35424**

---

## OPINION

This discovery mandamus arises from litigation surrounding two doctors who left one medical practice to join another.

Relators and defendants below are Methodist Primary Care Group ("Methodist Primary Care") and TMH Physician Organization d/b/a Houston

Methodist Specialty Physician Group ("Methodist Specialty"). The real party-in-interest and plaintiff below is Associates in Medicine, PA ("Associates").

The underlying litigation involves allegations that relators stole trade secrets, tortiously interfered with patient relationships, and committed other actionable conduct when two doctors left Associates and moved their medical practices to Methodist Primary Care. The discovery fight focuses on the propriety of a March 8, 2018 discovery order authorizing a third-party expert, paid for by Associates, to search electronic practice management systems used by relators and other entities for certain data stored in the cloud and accessible via the internet. *See Riley v. California*, 134 S.Ct. 2473, 2491 (2014) ("Cloud computing is the capacity of Internet-connected devices to display data stored on remote servers rather than on the device itself."). The data at issue pertains to relators—and to more than 200 other entities affiliated with the Methodist System, which are not parties to this litigation.

Relators filed a petition for writ of mandamus asking this court to compel the presiding judge of the 234th District Court, Harris County, to vacate the March 8 order granting Associates's motion to compel. The March 8 order appoints Pathway Forensics LLC to conduct, at Associates's expense, a data search of internet-accessible electronic practice management systems used by Methodist Primary Care, Methodist Specialty, and the other Methodist System entities. Associates contends this order is necessary to obtain evidence relevant to proving the damages it seeks.

Resolution of this mandamus turns on the standards governing discovery of electronic data under Texas Rule of Civil Procedure 196.4 and *In re Weekley Homes, L.P.*, 295 S.W.3d 309 (Tex. 2009) (orig. proceeding).

We conclude that partial mandamus relief is warranted because the March 8 order (1) runs afoul of Rule 196.4 and *In re Weekley Homes*, and (2) encompasses certain electronic data that Associates has not requested in discovery and has not shown to be within relators' possession, custody, or control.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Methodist Primary Care is an independently-managed Texas non-profit organization comprised of primary care physicians affiliated with the Methodist System. In turn, this system encompasses approximately 209 different entities. Methodist Primary Care has clinics throughout the greater Houston area. Payments for services performed by Methodist Primary Care are billed and collected by Methodist Specialty under a Billing Services Agreement.

The dispute underlying this mandamus proceeding began in May 2015 when Drs. Shari Rubin and Joshua Septimus joined Methodist Primary Care after having practiced medicine with Associates. About a month after their move, Associates sued the two doctors; it later filed an amended petition adding Methodist Primary Care and Methodist Specialty as defendants.

Associates alleges that Drs. Rubin and Septimus gave confidential information and trade secrets to Methodist Primary Care in connection with moving their practices. Associates asserts causes of action against Drs. Rubin and Septimus for misappropriation of trade secrets, breach of fiduciary duty, fraud, and breach of contract. Associates asserts causes of action against Methodist Primary Care for misappropriation of trade secrets, conspiracy to breach fiduciary duty and to commit fraud, tortious interference with prospective business relations, and common law

3

unfair competition. Associates asserts an "alter ego" theory against Methodist Specialty. Associates seeks actual damages and the disgorgement of all sums obtained through the alleged theft of trade secrets.

Associates served relators with 17 requests for production of documents reflecting the revenues and profits generated by Drs. Rubin's and Septimus's referrals of patients, along with documents reflecting "ancillary services" billed and collected by Methodist Specialty from May 2015 to the present.

In its requests for production, Associates defined "ancillary services" as "all Designated Health Services as identified in 42 C.F.R. § 411.351." According to relators' petition, ancillary services are services ordered by a physician to be performed by others such as lab services and x-rays.

These requests for production defined "documents" to include "electronic information which shall be produced in their native format."

Methodist Primary Care responded to these requests by producing profit and loss statements for Drs. Rubin and Septimus, summaries of charges and collections for both physicians, and profit and loss information for an x-ray machine operated at a Bellaire clinic. Relators responded to the requests for documents reflecting revenues generated in connection with referrals of patients and ancillary services by stating that they had "None."

Associates filed a motion to compel and amended motion for sanctions, arguing that relators possessed but refused to produce documents or data responsive to the requests at issue. It further asserted that a search of relators' computer systems would recover responsive documents and information. Associates asked the trial

4

court to appoint a forensic expert to search the electronic databases of relators for several categories of information. Associates argued that it was entitled to this relief under the standard established in *In re Weekley Homes* for allowing direct access to another party's computer hard drives. Relators filed a response arguing that the motion should be denied because Associates had not satisfied the *In re Weekley Homes* standard.

At the conclusion of a hearing on March 5, 2018, the trial court found that Methodist Primary Care and Methodist Specialty had defaulted on their obligation to search for and produce data and documents requested by Associates. The trial court signed an order granting the motion on March 8, 2018.

The March 8 order contains the following determinations.

- Methodist Primary Care and Methodist Specialty "have defaulted on their obligation to search [their] . . . records and produce data and documents that have been requested by [Associates] . . . in discovery."

- The production of Methodist Primary Care and Methodist Specialty "has been inadequate."

- "A search of [Methodist Primary Care's] . . . and [Methodist Specialty's] . . . practice management systems, EPIC and ATHENA would likely lead to the recovery of relevant and material documents."

- "Thus, the Court GRANTS the motion in part and ORDERS the appointment of an independent expert . . . to perform an independent examination of [Methodist Primary Care's] . . . and [Methodist Specialty's] . . . practice management systems as outlined below . . . ."

5

The order appoints Pathway Forensics LLC to search the electronic data of all 209 Methodist System entities using their practice management systems (EPIC, and, if necessary, their previous system, Athena). Pathway Forensics is required to search for documents or data, if any, evidencing (1) revenues generated by Drs. Rubin and Septimus arising from the Methodist System from May 15, 2015 to the present, (2) physician ancillary and professional services performed by or on behalf of Drs. Rubin and Septimus, and (3) physician ancillary and professional services performed by other physicians or on behalf of other physicians within the Methodist System for all patients referred to those physicians by Drs. Rubin and Septimus. The order directs that "[t]he [e]xpert's costs shall be borne by" Associates.

After relators filed their petition for writ of mandamus on March 14, 2018, we asked Associates to file a response and stayed the March 8 order.

## II.   MANDAMUS STANDARD

To obtain mandamus relief, a relator generally must show both that the trial court clearly abused its discretion and that relator has no adequate remedy by appeal. *In re Prudential Ins. Co*., 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). The appellate court reviews the trial court's application of the law de novo. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). The

6

relator must establish that the trial court could reasonably have reached only one conclusion. *Id*. at 840.

"A discovery order that compels production beyond the rules of procedure is an abuse of discretion for which mandamus is the proper remedy." *In re Nat'l Lloyds Ins. Co*., 507 S.W.3d 219, 223 (Tex. 2016) (orig. proceeding) (per curiam). "Mandamus relief is available when a trial court compels production of electronic data and information beyond the permissible bounds of discovery." *In re Pinnacle Eng'g, Inc*., 405 S.W.3d 835, 847 (Tex. App.—Houston [1st Dist.] 2013, orig. proceeding) (citing *In re Weekley Homes*, 295 S.W.3d at 322). The harm that a party will suffer from being required to relinquish control of its data for forensic inspection, and the harm that might result from revealing private conversations, trade secrets, and privileged or otherwise confidential communications, cannot be remedied on appeal. *In re Weekley Homes*, 295 S.W.3d at 322–23.

## III. ANALYSIS

Relators' petition presents four principal arguments.

- First, relators argue that Associates did not adequately request electronic data under Rule 196.4, and even if such a request had been made, they had no duty to create a document or report that does not currently exist.

- Second, relators argue that the March 8 order is subject to the *In re Weekley Homes* standard. They contend this standard was not met because Associates produced no evidence that (1) relators defaulted on their discovery obligations, and (2) a further search of relators' systems would retrieve responsive documents.

7

- Third, relators argue that the order compels discovery Associates did not request.

- Fourth, relators argue that the order improperly grants access to the electronic data of more than 200 Methodist System entities that are not parties to this litigation.

We discuss each of these arguments in turn, as well as the requirements of Rule 196.4 and *In re Weekley Homes*.

### A. Associates Requested Electronic Data

The discovery of electronic data is governed by Rule 196.4, which states:

> To obtain discovery of data or information that exists in electronic or magnetic form, the requesting party must specifically request production of electronic or magnetic data and specify the form in which the requesting party wants it produced. The responding party must produce the electronic or magnetic data that is responsive to the request and is reasonably available to the responding party in its ordinary course of business. If the responding party cannot--through reasonable efforts--retrieve the data or information requested or produce it in the form requested, the responding party must state an objection complying with these rules. If the court orders the responding party to comply with the request, the court must also order that the requesting party pay the reasonable expenses of any extraordinary steps required to retrieve and produce the information.

Tex. R. Civ. P. 196.4. This rule's focus on production of data that is "reasonably available" in the "ordinary course of business" with "reasonable efforts" reflects a policy underlying discovery in general—and electronic discovery in particular—to achieve an appropriate balance between discoverability and accompanying burdens. *See, e.g.,* Tex. R. Civ. P. 192.4, 192.6(b); *see also In re State Farm Lloyds*, 520 S.W.3d 595, 599 (Tex. 2017) (orig. proceeding) ("[A]ll discovery is subject to the

8

proportionality overlay embedded in our discovery rules and inherent in the reasonableness standard to which our electronic-discovery rule is tethered.").

Relators argue that they had no duty under Rule 196.4 to search for and produce responsive electronic data because none of Associates's requests specifically request electronic data from the EPIC or Athena systems.

Although Associates did not reference Rule 196.4 in its requests for production, the requests define "document" as including "all other electronic information which shall be produced in their native format." Associates's motion to compel made it clear that it was seeking the production of electronic data. Accordingly, Associates sufficiently invoked Rule 196.4. *See In re Shipman*, 540 S.W.3d 562, 565–67 (Tex. 2018) (orig. proceeding) (per curiam) ("Like the deleted emails sought in *Weekley*, it became 'abundantly clear' throughout the course of litigation and before trial-court intervention that Jamie sought financial records she believed were relevant to this case, whether they exist in a physical file cabinet or on an electronic device. . . . Regardless of the specificity of Jamie's initial requests, she argued in her second motion to compel that 'Shipman should be required to produce all paper and electronic records he can locate using diligent efforts, and to make his computer[s] available for forensic examination.' If Jamie's discovery requests did not technically meet Rule 196.4's specificity requirement, Shipman cannot argue Jamie's intent was not 'clearly understood.'") (citation omitted).

Based on this record, relators had a duty to undertake "reasonable efforts" to produce electronic data responsive to Associates's requests that is "reasonably available" to relators in their "ordinary course of business," and to object if they contended that requested data was not reasonably available. Tex. R. Civ. P. 196.4.

9

**B.** **Relators Had a Duty to Produce Electronic Data That is Responsive and Reasonably Available**

Relators assert that "[u]nder Texas Rule of Civil Procedure 192.3, Relators are only required to produce documents within their 'possession, custody, or control.'" They further assert that "[a] document that does not exist is not within a party's 'possession, custody, or control'" and "a party may not be compelled to reduce raw data into a specific requested form." These contentions miss the mark because they conflate two different inquiries: (1) do physical documents already exist, and (2) regardless of whether physical documents already exist, is the requested data retrievable under Rule 196.4's standard?

Relators rely on *In re Family Dollar Stores of Tex., LLC*, No. 09-11-00432-CV, 2011 WL 5299578 (Tex. App.—Beaumont Nov. 3, 2011, orig. proceeding) (per curiam), to support these arguments. In that case, the trial court ordered Family Dollar to "produce a list of all incidents and lawsuits relating to falling merchandise in the Family Dollar stores located in the county in which I–45 runs and all stores east to the Texas border of the store at issue in this lawsuit [located in Beaumont, Texas] for the five (5) years prior to September 11, 2009." The court of appeals held that Family Dollar did not have a duty to reduce raw data from an electronic database into the form of a paper report or list that did not currently exist. *Id*. at *2. The court of appeals cited Rule 196.1, which pertains to requests for production of documents. The court of appeals also cited *McKinney v. Nat'l Union Fire Ins. Co*., 772 S.W.2d 72, 73 n.2 (Tex. 1989). *McKinney* states that former Rule 167(1)(a), the predecessor to Rule 196.1, deals with the discovery and production of existing documents and

10

cannot be used to force a party to make lists or reduce information to tangible form. *Id.*

*In re Family Dollar Stores* is distinguishable because the discovery at issue in that case requested production of a "'printout' of 'the computerized report(s) and/or other record(s) generated in the ordinary course of [Family Dollar's] business [.]'" *Id.* at *1 n.1. Here, in contrast, the request for production requested "documents" and then defined "documents" to include "electronic information" in "native format." More fundamentally, the potentially challenging issues arising in connection with electronic data disputes under Rule 196.4 are not necessarily resolved solely by invoking case law addressing limits under Rule 196.1 on compelling litigants to "create" physical documents printed on paper. *See In re State Farm Lloyds*, 520 S.W.3d at 599 ("[E]lectronic discovery concerns manifest in variable shades and phases. In this dispute, the parties are at odds over the form in which [electronically stored information] . . . must be produced . . . . The requesting party seeks [electronically stored information] . . . in native form while the responding party has offered to produce in searchable static form . . . .").

Associates did not request only physical documents; it also requested "electronic information" in "native format." Rule 196.4 is clear that when a specific request for electronic data has been made, the responding party is required to produce responsive electronic data that is reasonably available in the ordinary course of business. *See* Tex. R. Civ. P. 196.4.

11

**C.** *In re Weekley Homes* **Governs Discovery of Electronic Data**

*In re Weekley Homes, L.P.*, 295 S.W.3d at 315–22, sets forth the procedures for obtaining discovery of electronic information under Texas Rule of Civil Procedure 196.4 and the standard for granting an expert access to data on another party's computer hard drives.

The supreme court summarized the proper procedures under Rule 196.4 as follows.

- "When a specific request for electronic information has been lodged, Rule 196.4 requires the responding party to either produce responsive electronic information that is 'reasonably available to the responding party in its ordinary course of business,' or object on grounds that the information cannot through reasonable efforts be retrieved or produced in the form requested." *Id.* at 315.

- "Once the responding party raises a Rule 196.4 objection, either party may request a hearing at which the responding party must present evidence to support the objection. Tex. R. Civ. P. 193.4(a)." *Id.*

- "To determine whether requested information is reasonably available in the ordinary course of business, the trial court may order discovery, such as requiring the responding party to sample or inspect the sources potentially containing information identified as not reasonably available." *Id.*

- "Should the responding party fail to meet its burden, the trial court may order production subject to the discovery limitations imposed by Rule 192.4." *Id.*

12

- "If the responding party meets its burden by demonstrating that retrieval and production of the requested information would be overly burdensome, the trial court may nevertheless order targeted production upon a showing by the requesting party that the benefits of ordering production outweigh the costs. Tex. R. Civ. P. 192.4." *Id.*

- "To the extent possible, courts should be mindful of protecting sensitive information and should choose the least intrusive means of retrieval." *Id.* at 316.

The supreme court also discussed the standard for allowing an expert access to a litigant's computer hard drives. The supreme court recognized that "[p]roviding access to information by ordering examination of a party's electronic storage device is particularly intrusive and should be generally discouraged, just as permitting open access to a party's file cabinets for general perusal would be" and that "the rules are 'not meant to create a routine right of direct access.'" *Id.* at 317.

"As a threshold matter, the requesting party must show that the responding party has defaulted in its obligation to search its records and produce the requested data." *Id.* A court may not rely on "mere skepticism or bare allegations that the responding party has failed to comply with its discovery duties." *Id.* at 317–18.

The requesting party also should show that the responding party's production has been inadequate and that a search of its computer could recover relevant materials. *Id.* at 317. Specifically, the requesting party should show that there is a reasonable likelihood that a search of the computers will reveal the information that the requesting party seeks. *Id.* at 319–21. "Finally, when determining the means by which the sources should be searched and information produced, direct access to

13

another party's electronic storage devices is discouraged, and courts should be extremely cautious to guard against undue intrusion." *Id*. at 322.

We now turn to the application of these standards.

**D.    The March 8 Order Runs Afoul of *In re Weekley Homes***

**1.    *In re Weekley Homes* applies to this dispute**

Associates argues that *In re Weekley Homes* does not apply because the March 8 order does not compel access by a litigation opponent or expert to a computer hard drive in the possession of relators. Instead, the order directs an expert paid by Associates to search electronic practice management systems for certain data stored remotely and accessible via the internet.

According to Associates, the March 8 order "does not involve the type of direct access to a party's electronic storage device that is 'particularly intrusive.'" Associates emphasizes that "Methodist specifically advertises that EPIC is a 'web-based service that requires no installation on your servers or computers.' Moreover, to access EPIC, 'all that is needed is a PC or Macintosh computer, a high speed or DSL internet connection . . . and current browser edition of Internet Explorer or Mozilla Firefox.'" Associates asserts as follows: "Clearly, accessing these databases is not akin to a forensic search of a computer hard drive, but, in using an example from the legal field, is more analogous to using a web-based service like Westlaw or LexisNexis."

The distinction proffered by Associates is not persuasive. Allowing direct access by a litigation opponent or a third-party expert acting for the opponent to relators' data via an internet-accessible practice management system raises

14

significant concerns regarding undue intrusion. Those concerns are just as significant as the concerns that animated the analysis of providing third-party access to data on a hard drive in the litigant's physical possession. *See In re Weekley Homes, L.P.*, 295 S.W.3d at 317 ("Providing access to information by ordering examination of a party's electronic storage device is particularly intrusive and should be generally discouraged, just as permitting open access to a party's file cabinets for general perusal would be"). *In re Weekley Homes* did not focus on the technical details of how, or where, a party stores its data; it focused instead on addressing undue burden and placing specific limits on a highly intrusive form of discovery involving direct access to one litigant's data by a litigation opponent or an expert paid by the opponent. *See id* at 315–22. The supreme court's intrusion concerns apply regardless of whether the responding party stores its data on a hard drive in its possession or instead stores its data in a database that can be accessed remotely. The focus is access to data and the circumstances under which access will be allowed.

### 2. The trial court acted within its discretion in determining that relators did not fully comply with their obligation to search for electronic data, and that a further search likely would recover responsive data

The trial court found that Methodist Primary Care and Methodist Specialty defaulted on their obligation to search records and produce data and documents that have been requested by Associates in discovery. The trial court also found that relators' production was inadequate and that a search of Methodist Primary Care's and Methodist Specialty's practice management systems, EPIC and Athena, likely would lead to the recovery of relevant and material documents. Relators contend that no evidence supports these findings.

15

Relators did not object to Associates's requests for electronic data on the ground that this data is not "reasonably available" in the "ordinary course of business" and cannot be retrieved "through reasonable efforts" as provided by Rule 196.4. Relators responded "None" to each request, which indicates "no items have been identified—after a diligent search—that are responsive to the request." *See* Tex. R. Civ. P. 196.2.

As support for the trial court's findings, Associates points to the deposition testimony of Adrienne Moeller. She is the Director of Physician Strategic Services for Methodist Primary Care; she was involved with evaluating Drs. Rubin's and Septimus's practices and generating their compensation packages. Moeller was asked about Exhibit 5 to her deposition, which appears to be a document that was created by Methodist Primary Care.

Exhibit 5 shows a breakdown of monies collected for ancillary services versus collections that are not ancillary services for each of Methodist Primary Care's primary care physicians in 2012.[1] The last page of Exhibit 5 shows the amount of revenues that Methodist Primary Care collected for ancillary services for each of its physicians. According to Associates, Moeller's testimony and Exhibit 5 demonstrate that relators can retrieve data from their EPIC or Athena management systems showing ancillary revenues generated by individual physicians.

Relators argue that there is no evidence Methodist Primary Care has generated such reports for Drs. Rubin or Septimus, or that revenue information for procedures

---

[1] Exhibit 5 uses the term "designated health services," which Moeller testified was another name for ancillary services.

16

performed outside of Methodist Primary Care by non-party entities or non-party physicians is accessible on EPIC or Athena. Relators argue that Exhibit 5 shows only that Moeller generated a one-time report to compare Dr. Septimus's practice at Associates against a group of Methodist Primary Care physicians before making an offer of employment to Dr. Septimus.

At a minimum, this record supports findings that (1) responsive electronic data for individual physicians was reasonably available to Methodist Primary Care and/or Methodist Specialty; and (2) this data can be retrieved with reasonable effort, including information concerning revenues collected for ancillary services referred or ordered by individual physicians. Relators' contention that they have not generated a report or retrieved this information specifically for Drs. Rubin or Septimus does not address the operative standard under Rule 196.4. This contention falls short because it does not explain why this requested information concerning Drs. Rubin and Septimus is not "reasonably available" to relators in the "ordinary course of business" and cannot be retrieved "through reasonable efforts" even if this information previously has not been retrieved for Drs. Rubin and Septimus.

This record is sufficient under *In re Weekley Homes* to show that relators defaulted at least in part on their obligation under Rule 196.4 to produce responsive electronic data; that their production has been inadequate; and that a further search of their electronic data could recover relevant materials. *See* 295 S.W.3d at 317.

However, and as discussed below in section E, neither Exhibit 5 nor any of the other evidence that Associates presented to the trial court in support of its motion[2]

---

[2] In addition to Moeller's deposition testimony, Associates points to (1) the deposition testimony of Jeff Carr in both this proceeding and another proceeding, only a portion of which was presented to the

shows that relators have possession, custody, or control of electronic data showing the revenues (if any) that the other Methodist System entities, which are not parties to this litigation, have collected for patients or ancillary services referred by Drs. Rubin and Septimus. In this regard, Associates did not show that relators defaulted on their discovery obligation.

### 3. The March 8 order runs afoul of *In re Weekley Homes* because it does not consider whether less intrusive means will suffice

*In re Weekley Homes* admonished that "when determining the means by which the sources should be searched and information produced, direct access to another party's electronic storage devices is discouraged, and courts should be extremely cautious to guard against undue intrusion." 295 S.W.3d at 322. It also stated that, to the extent possible, courts "should choose the least intrusive means of retrieval." *Id.* at 316. It recognized that significant harm can result from granting direct access when direct access is not warranted; this harm arises from the risk of revealing private conversations, trade secrets, and privileged or otherwise confidential communications. *Id.* at 322–23. This harm is not remedied by requiring the party seeking discovery to pay for the intrusion.

---

trial court, (2) a Billing Services Agreement between relators, (3) documents that one of Associates's doctors obtained from EPIC, which were not offered into evidence, and (4) financial records of relators derived from EPIC or Athena. We may not consider much of this evidence because the record does not show that it was presented to the trial court or admitted into evidence at the hearing. An appellate court reviews the actions of the trial court based solely on the record before the court at the time it makes its ruling. *See Axelson, Inc. v. Mcllhany*, 798 S.W.2d 550, 556 n.9 (Tex. 1990). To the extent that this additional evidence was presented to the trial court, we conclude that it does not show that relators defaulted on their discovery obligations.

Not every situation involving a party's failure to produce requested electronic data under Rule 196.4 requires granting direct access to all of the defaulting party's electronic data; whether direct access should be ordered depends on the circumstances of each case. The supreme court noted that "the rules are 'not meant to create a routine right of direct access.'" *Id.* at 317. The supreme court also has emphasized that "the discovery rules imbue trial courts with the authority to limit discovery based on the needs and circumstances of the case, including electronic discovery." *In re State Farm Lloyds*, 520 S.W.3d at 599.

Here, the March 8 order directs an expert paid by Associates to search electronic practice management systems for data stored on remote servers and accessible via the internet. Before resorting to this extreme and highly intrusive measure, *In re Weekley Homes* and *State Farm Lloyds* teach that consideration should be given to whether less intrusive means will suffice—for example, by first ordering relators themselves to search electronic data within their possession, custody, or control, and to produce responsive data, regardless of whether the data already exists in a document on the system or has been printed in hard-copy form.

Consideration of this less intrusive step comports with *In re Weekley Homes* and its admonition to exercise "extreme caution" and, to the extent possible, "choose the least intrusive means of retrieval" that is appropriate under the circumstances. It also would allow the trial court to evaluate the adequacy of relators' search and production in response to such an order before deciding whether the extreme intrusion of direct access should be ordered. *Cf. In re Weekley Homes*, 295 S.W.3d at 315 ("To determine whether requested information is reasonably available in the ordinary course of business, the trial court may order discovery, such as requiring

19

the responding party to sample or inspect the sources potentially containing information identified as not reasonably available.").

**E.     The March 8 Order Authorizes Discovery That Associates Did Not Request And Has Not Shown to be Within Relators' Possession, Custody, or Control**

"[A]n essential prerequisite to filing a motion to compel production (or for sanctions) is that another party has failed to permit discovery as requested in response to a request submitted under TRCP 196." *In re Lowe's Cos., Inc.*, 134 S.W.3d 876, 880 n.7 (Tex. App.—Houston [14th Dist.] 2004, orig. proceeding). "It logically follows that a party cannot be compelled to produce (or sanctioned for failing to produce) that which it has not been requested to produce." *Id.* It is an abuse of discretion for the trial court to order discovery that has not been requested or that is broader that what has been requested. *See In re Master Flo Valve Inc.*, 485 S.W.3d 207, 218–19 (Tex. App.—Houston [14th Dist.] 2016, orig. proceeding).

The requests for production that were the subject of Associates's motion request "documents and communications reflecting all profits, revenues and/or losses generated by Rubin and/or Septimus" from patient referrals and ancillary services (including x-rays and lab or draw services) "billed and collected by [Methodist Specialty] from May 2015–present." The order authorizes discovery that is significantly broader than was requested by Associates in two respects.

First, the order is not limited to documents reflecting profits, revenues and/or losses; it also includes "records that reflect all physician ancillary and professional services" regardless of whether they reflect profits, revenues and/or losses.

20

Second, the order is not limited to patient referrals and ancillary services billed and collected by Methodist Specialty; it also includes physician professional and ancillary services performed by any physician or employee within the Methodist System (which encompasses approximately 209 different entities) referred by Drs. Rubin and/or Septimus, regardless of whether the these services were billed and collected by Methodist Specialty and regardless of whether the physician or service provider was employed by relators.[3]

Additionally, a party is required to produce only those documents within its "possession, custody, or control." Tex. R. Civ. P. 192.3(b); *In re U–Haul Int'l*, 87 S.W.3d 653, 656 (Tex. App.—San Antonio 2002, orig. proceeding) (per curiam). A party may not be compelled to produce documents that are not within its "possession, custody, or control" as set forth in Texas Rule of Civil Procedure 192.7(b). *In re Fairway Methanol LLC*, 515 S.W.3d 480, 495 (Tex. App.—Houston [14th Dist.] 2017, orig. proceeding). That a party may have access to the documents is insufficient; the party must have a legal right to possession of the documents. *Id*. (citing *In re Kuntz*, 124 S.W.3d 179, 184 (Tex. 2003) (orig. proceeding)).

---

[3] Associates argues that its Second Request for Production requested documents and communications reflecting revenue generated by Drs. Rubin and/or Septimus from patient referrals and for referral of ancillary services to Houston Methodist, which it defined as including any of associated entities, parent companies, subsidiaries, affiliates, agents and employees or all other natural persons, businesses, or legal entities acting or purporting to act on its behalf. However, our court may not consider the Second Request for Production because the record does not show that it was presented to the trial court as part of the motion to compel. *See Axelson, Inc.*, 798 S.W.2d at 556 n.9. Additionally, arguments not presented to the trial court will not be considered in the review of a petition for writ of mandamus. *See In re Am. Optical Corp.*, 988 S.W.2d 711, 714 (Tex. 1998) (orig. proceeding) (per curiam); *In re RH White Oak, LLC*, No. 14-15-00789-CV, 2016 WL 3213411, at *9 (Tex. App.—Houston [14th Dist.] June 9, 2016, orig. proceeding) (mem. op.).

"Possession, Custody, or Control of an item means that the person either has physical possession of the item or has a right to possession of the item that is equal or superior to the person who has physical possession of the item." Tex. R. Civ. P. 192.7. Associates has not produced evidence that relators have possession, custody, or control of documents reflecting physician professional and ancillary services that were performed or billed for by other entities within the Methodist System. That entities are related is not sufficient by itself to establish that an entity has possession of the related entity's documents.[4] Associates has not produced any evidence that relators have a right to possess revenue information of other Methodist System entities that is equal or superior to that of those entities, even assuming that such information is available to relators on the EPIC or Athena systems. *See* Tex. R. Civ. P. 192.7.

---

[4] The right to obtain possession is a legal right based upon the relationship between the party from whom a document is sought and the person who has actual possession of it." *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 729 (Tex. 1993) (orig. proceeding). The party seeking production has the burden of proving that the relator has constructive possession or the right to obtain possession of the requested documents. *Id.* at 729; *In re U–Haul Int'l*, 87 S.W.3d at 656. In *Tanner*, 856 S.W.2d at 729, the Texas Supreme Court held that there was no evidence that GCSC had constructive possession of the document at issue or a right to compel its production because plaintiffs adduced no evidence regarding the corporate relationship between GTFL and GCSC, or any right of the latter to control the former. Similarly, in *In re U–Haul Int'l*, 87 S.W.3d at 656–57, the court of appeals held, in a product liability action, that the trial court abused its discretion for sanctioning UHI for failing to produce accident files and other documents within the possession of UHI's insurer (Republic) despite common ownership by a parent corporation because plaintiff failed to prove that UHI had the ability to compel Republic to provide the responsive documents or that UHI and Republic form a single business enterprise.

22

Accordingly, the trial court also abused its discretion by ordering certain discovery that Associates neither requested nor proved is within relators' possession, custody, or control.[5]

## IV. CONCLUSION

We conditionally grant the petition for writ of mandamus. We are confident the trial court will act in accordance with this opinion. The writ of mandamus will issue only if the trial court fails to do so.[6]

/s/     William J. Boyce
        Justice

Panel consists of Justices Boyce, Donovan, and Jewell.

---

[5] Associates argues that this court may not consider these arguments because the record does not show that relators filed their objections regarding these errors before the trial court signed its March 8 order. Generally, mandamus is not available to compel an action which has not first been demanded and refused. *Terrazas v. Ramirez*, 829 S.W.2d 712, 723 (Tex. 1991) (orig. proceeding). But such requirement is excused when the request would have been futile and the trial court's refusal little more than a formality. *Id*. "To determine whether a request would have been futile, appellate courts examine whether the request would have added anything for the court's consideration." *In re RH White Oak, LLC*, 442 S.W.3d at 503. At the hearing, relators' counsel argued that discovery should be limited to the defendants Methodist Primary Care and Methodist Specialty. The trial court responded by stating that it also wanted to know the income generated by all related entities inside the EPIC system. This statement indicates that further objection by relators to the trial court including non-party Methodist System entities in its order would have been futile.

[6] Relators also filed a motion asking this court to strike and disregard the documents included in Tabs A–F of Associates's appendix because the record does not show that these documents were presented to the trial court before it issued its March 8 order. We grant relators' request to disregard these documents and accordingly, do not consider them.

23