**Petition for Writ of Mandamus Conditionally Granted in Part and Denied in Part and Opinion filed January 30, 2024.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-23-00183-CV

---

## IN RE 4X INDUSTRIAL, LLC, FRANK THIELEN, ESTEBAN RUIZ, Relators

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**334th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2019-65517**

---

## O P I N I O N

This is the second original proceeding in our court between these parties arising from a discovery order in a trade secrets theft action. In the present matter, relators 4X Industrial, LLC, Frank Thielen, and Esteban Ruiz seek mandamus relief

from the trial court's order compelling Ruiz to produce two electronic storage devices onto which he allegedly downloaded trade secrets belonging to his former employer, real party in interest Russell Marine, LLC. The order also contains a separate, conditional provision that, if it is determined from a forensic examination of the devices that they were connected to any other computers, then relators are to produce any such computers within their control within one business day after that determination is made. Relators seek mandamus relief from this conditional provision as well.

We conditionally grant the petition in part and deny it in part.

## Background

We previously discussed some of the facts pertaining to this dispute in a prior opinion. *In re 4X Indus., LLC*, 639 S.W.3d 801 (Tex. App.—Houston [14th Dist.] 2021, orig. proceeding). 4X Industrial and Russell Marine are direct competitors in the railroad construction industry with common clients such as Union Pacific and Kansas City Southern. Russell Marine employed Frank Thielen and Esteban Ruiz. According to Russell Marine, Thielen and Ruiz were entrusted with Russell Marine's trade secrets for the sole purpose of preparing bid proposals, servicing customer inquiries and requests, managing projects, and marketing railroad construction business. Russell Marine asserts that its protected trade secret information includes bid proposals, pricing information, bidding and pricing strategy and processes, targeted projects, prospective projects, client lists, client information, budgets, estimates, marketing plans, and project management processes and procedures.

2

Russell Marine terminated Thielen's employment in April 2019, and 4X Industrial hired him two months later. Russell Marine terminated Ruiz's employment in August 2019, and 4X Industrial hired him that month. It is alleged that Russell Marine performed a forensic examination of Ruiz's work computer after his departure. The examination revealed that Ruiz downloaded 15,000 pages of Russell Marine's trade secrets onto at least one and possibly two electronic storage devices (the "Ruiz Devices"), which Ruiz took with him upon his termination. The Ruiz Devices consist of (1) a Western Digital "Easy Store" external hard drive (the "WD Drive"), and (2) a UDisk USB storage device (the "USB Device"). According to Russell Marine, the downloaded information included trade secret information regarding pricing, budgeting, bidding and pricing strategies and processes, payroll information, and project management process and procedures.

Russell Marine sued 4X Industrial, Thielen, and Ruiz for trade secrets misappropriation and related claims on September 11, 2019.

Discovery disputes followed. In an earlier mandamus proceeding, we considered a complaint by 4X Industrial that a trial court order compelling compliance with certain of Russell Marine's requests for production was an abuse of discretion because the order at issue compelled 4X Industrial to produce its trade secrets. *In re 4X Indus., LLC*, 639 S.W.3d at 807. We conditionally granted mandamus relief because 4X Industrial demonstrated that the requests at issue sought its trade secrets, and Russell Marine had not satisfied its evidentiary burden to show that the information requested was necessary to a fair adjudication of its claims. *Id.* at 810-15.

The present proceeding involves a separate discovery dispute arising from relators' alleged failure to adequately respond to Russell Marine's discovery requests for its own trade secret information Ruiz is alleged to have taken and that is the subject of the lawsuit. In the requests at issue, Russell Marine asked Ruiz and 4X Industrial to produce the Ruiz Devices and all Russell Marine information downloaded to them. We summarize the requests below.

## A.    Discovery requests to Ruiz

The relevant requests for production served on Ruiz are the following:

**REQUEST FOR PRODUCTION NO. 6:**

Any and all documents or data in your possession, custody, or control (1) which came from or was copied from Russell Marine or other Russell Marine sources; or (2) which was generated by you or anyone else based upon information obtained from Russell Marine or which was generated by you or anyone else on behalf of Russell Marine.

**REQUEST FOR PRODUCTION NO. 17:**

All disks, CD's or DVD's containing any information or files you have downloaded from Russell Marine's computer system.

**REQUEST FOR PRODUCTION NO. 27:**

Any and all documents or electronic data of any kind which you copied, downloaded, emailed, or otherwise obtained at or from Russell Marine, or from anyone working for or on behalf of Russell Marine.

**REQUEST FOR PRODUCTION NO. 37:**

All thumb drives, disks or external drives of any kind containing the information or files you downloaded from Russell Marine's computer system in at any time during 2019.

Ruiz asserted the following "General Response" to all requests:

> At the time of termination of Ruiz's employment with Russell Marine, Ruiz had accumulated a number of documents relating to his work, including both Russell Marine documents and documents from before he worked for Russell Marine, over the years in his personal possession at home.
>
> Ruiz saved these documents to a USB drive that he turned over to outside counsel for his new employer, 4X Industrial, after learning that Russell Marine was asserting claims relating to Ruiz's employment by 4X. Ruiz's counsel has copies of those documents. **These documents have <u>not</u> been provided to 4X**, and Ruiz no longer has any of those documents in his personal possession. Ruiz's counsel will produce to Plaintiff's counsel copies of all of the documents on the USB drive. [Bold in original.]

Ruiz produced copies of the documents contained on the USB drive, but he produced nothing else in response to these requests.

## B. Discovery requests to 4X Industrial

Russell Marine also served the following requests for production on 4X Industrial:

**REQUEST FOR PRODUCTION NO. 24:**

All thumb drives, disks, CD's or DVD's you have received or used containing any information or files that have been downloaded from Russell Marine's computer system.

**REQUEST FOR PRODUCTION NO. 27:**

All thumb drives, disks, CD's or DVD's containing any information or files Ruiz has downloaded from Russell Marine's computer system.

5

Among other objections to these requests, 4X Industrial asserted that they were "unduly burdensome," that it could not reasonably determine what information was requested, and that it otherwise knew of no responsive documents. Additionally, 4X Industrial referred Russell Marine to Ruiz's responses.

## C.  Discovery request to Ruiz and 4X Industrial

Finally, Russell Marine served a second set of requests for production on both Ruiz and 4X Industrial, which included a request to produce any computer or other storage device that contained, or had been used to download, store, or transmit, Russell Marine's information.  The relevant request is:

**REQUEST FOR PRODUCTION NO. 1:**

All computers, electronic note pads, telephones, SIM cards, hard drive devices, USB storage devices and other data storage devices that contain or were used to download, store or transmit data or information of any kind from a device, computer or server belonging to or containing information of Russell Marine, including without limitation any such device containing such information or that contained copies of any such Russell Marine information, without regard to the original source thereof.  The responsive documents and devices shall include, but not be limited to, the login and password information for accessing these devices.

Objecting to this request, Ruiz asserted that Russell Marine had not established entitlement to directly access his electronic devices under the standards articulated in *In re Weekley Homes*, 295 S.W.3d 309 (Tex. 2009) (orig. proceeding), *In re Shipman*, 540 S.W.3d 562 (Tex. 2018) (orig. proceeding), and *In re Methodist Primary Care Group*, 553 S.W.3d 709 (Tex. App.—Houston [14th Dist.] 2018, orig. proceeding).  He added that his devices contained personal, private, and privileged

6

information that was not relevant to the claims and not discoverable, and that there was no showing that requested and relevant data could not be obtained by less intrusive means, such as Ruiz searching his devices for requested documents. Further, he directed Russell Marine to his earlier representation that all Russell Marine documents on his USB drive had been given to his attorney and provided to Russell Marine.

For its part, 4X Industrial asserted that, subject to various objections, it was unaware of any responsive devices.

## D.     Motion to compel and court order

Russell Marine filed a motion to compel production of electronic storage devices.  It argued that Ruiz's and 4X Industrial's responses to the above requests were inadequate, that all information Russell Marine contended had been downloaded and taken by Ruiz had not been produced, and that the information at issue in the suit was likely to be found on the Ruiz Devices.  Russell Marine attached a declaration by its expert, Craig Ball.  After examining forensic images of Ruiz's company computer and phone, Ball determined that:

- In July 2019, Ruiz attached the WD Drive to his Russell Marine laptop via the USB port and installed a backup program to copy numerous folders and gigabyte volumes of files from the laptop to the WD Drive.  Ruiz ran the backup program twice on July 10, 2019, and subsequently, uninstalled the application (during the morning of July 15, 2019) but failed to eradicate all artifacts of its prior installation and use.

- The data downloaded to the WD Drive included estimates, bid data, contracts, proposals, cost data, communications, contacts, and other

business and proprietary information relating to Russell Marine's clients and projects.

- Between July 12 and July 15, 2019, Ruiz "double deleted" more than 700 files (i.e. he deleted files from their folders and then emptied those deleted files from the Windows Recycle Bin). Almost all these deleted documents were Excel spreadsheets and Word and Acrobat documents.

- On July 14 and 24, 2019, Ruiz attached the USB Device[1] to his Russell Marine laptop.

- The WD Drive was again connected to Ruiz's Russell Marine laptop on July 29, 2019.

Russell Marine requested that the Ruiz Devices be produced for forensic examination based on a protocol to be agreed upon by Ball and 4X Industrial's expert.

Ruiz and 4X Industrial filed separate responses to the motion to compel, both arguing primarily that Russell Marine had not satisfied the *Weekley Homes* standards for production of electronic storage devices. Ruiz also filed his declaration, in which he swore:

- He possessed the WD Drive referenced in Ball's declaration. He had the WD Drive for years and stored both work and personal documents on it, though he could not remember every document. He had not accessed the WD Drive "recently." He asserted that the personal information on the WD Drive was irrelevant to the lawsuit and that it would violate his privacy rights to grant Russell Marine's lawyers or experts direct access.

- He had searched for but not located a USB drive matching the USB Device identified in Ball's declaration.

---

[1] Ball stated that the USB Device was assigned Windows serial number 6&cc50df8.

- His discovery responses accurately stated that he had saved to a USB drive the work documents he accumulated at Russell Marine. It was his understanding that his counsel produced all of those documents to Russell Marine.

The trial court granted the motion to compel and signed the order at issue, which provides:

It is hereby ORDERED that the Plaintiff's Motion is granted. Defendant Esteban Ruiz shall produce the Western Digital "Easy Store" 25FC external hard drive (VIN 70B9E531) and the USB device (UDisk USB Device 002D37A1, E41AA8B7) (the "Transfer Devices") to Russell Marine's counsel within 21 days of the entry of this Order. It is further,

ORDERED that Russell Marine's forensic expert, Craig D. Ball, and Defendants' forensic expert, Noel Kersh, shall work together to determine a forensic examination protocol to be applied to the Transfer Devices and any devices to which they were connected. It is further,

ORDERED that if it is determined from the forensic examination that the Transfer Devices were connected to any computers, that the Defendants Esteban Ruiz, Frank Thielen and 4X Industrial, LLC shall produce any such computers within their possession, custody or control within one (1) business day after the experts, or any of them, make that determination. It is further,

ORDERED that all non-privileged hard copies, together with an electronic copies [sic] with all metadata intact, of any Russell Marine documents referred to in Plaintiffs First Amended Petition shall be produced to counsel for Russell Marine within one (1) business day from the date of completion of the forensic examination of the computers.

**Analysis**

Relators contend that the order is an abuse of discretion because Russell Marine has not established entitlement to directly access the identified electronic devices under the standards articulated in *Weekley Homes*, *Shipman*, and *Methodist Primary Care Group*. Further, 4X Industrial seeks relief from the court's order that it produce any computers to which the Ruiz Devices were connected within one business day after that determination is made. They say it would be impossible for them to identify, locate, authenticate, and produce any such drives in one business day. Relators contend that they lack adequate remedy by ordinary appeal.

Russell Marine responds that *Weekley Homes* does not apply here and that its requirements are met in any event as to all the identified devices. Russell Marine adds that only the portions of the court's order compelling production of the Ruiz Devices are ripe for mandamus review because it has yet to be determined whether those devices were attached to any other 4X Industrial computers. With respect to the deadline by which 4X Industrial must produce any computers to which the Ruiz Devices were attached, Russell Marine urges us to deny relief because that deadline is not unreasonable, and it will agree to provide additional time to comply.

## A.  Mandamus standard of review

To obtain mandamus relief, a relator generally must show both that the trial court clearly abused its discretion and that the relator has no adequate remedy by appeal. *In re Dawson*, 550 S.W.3d 625, 628 (Tex. 2018) (orig. proceeding) (per curiam); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if

10

it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re H.E.B. Grocery Co., L.P.*, 492 S.W.3d 300, 302-03 (Tex. 2016) (orig. proceeding) (per curiam); *In re Cerberus Cap. Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). The appellate court reviews the trial court's application of the law de novo. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). The relator must establish that the trial court could reasonably have reached only one decision. *Id.*

A discovery order, including one requiring production of electronic data and information, that compels production beyond the rules of procedure is an abuse of discretion for which mandamus is the proper remedy. *See In re Nat'l Lloyds Ins. Co.*, 507 S.W.3d 219, 223 (Tex. 2016) (orig. proceeding) (per curiam); *Methodist Primary Care Grp.*, 553 S.W.3d at 714. The harm that a party will suffer from being required to relinquish control of its data for forensic inspection, and the harm that might result from revealing private conversations, trade secrets, and privileged or otherwise confidential communications, cannot be remedied on appeal. *See Weekley Homes*, 295 S.W.3d at 322-23.

**B.     Law applicable to the production of electronic storage devices**

*Weekley Homes* explained the standards for granting an expert access to data on another party's electronic storage device. As examinations of that sort are "particularly intrusive," they are "generally discouraged" and should not be ordered routinely. *Id.* at 317; *Methodist Primary Care Grp.*, 553 S.W.3d at 717.

As a threshold to granting direct access to electronic devices, "'the requesting party must show that the responding party has somehow defaulted in its obligation

to search its records and produce the requested data.'" *Shipman*, 540 S.W.3d at 567 (quoting *Weekley Homes*, 295 S.W.3d at 317). The requesting party should also show that the responding party's production has been inadequate and that a search of the opponent's electronic storage device is reasonably likely to reveal responsive information. *See Weekley Homes*, 295 S.W.3d at 317, 319-21; *Methodist Primary Care Grp.*, 553 S.W.3d at 718. This burden is "high," *Shipman*, 540 S.W.3d at 569, and courts do not rely on "'mere skepticism or bare allegations that the responding party has failed to comply with its discovery duties.'" *Id.* at 568 (quoting *Weekley Homes*, 295 S.W.3d at 317-18).

When examination of a party's electronic storage device is appropriate, only a qualified expert should be afforded access, and the least intrusive means of providing relevant, responsive information should be employed. *Weekley Homes*, 295 S.W.3d at 322. A party from whom discovery is sought is entitled to protection from an unreasonable invasion of personal, constitutional, or property rights. *Id.* at 318; *In re VERP Inv., LLC*, 457 S.W.3d 255, 261 (Tex. App.—Dallas 2015, orig. proceeding). Courts must address these privilege, privacy, and confidentiality concerns. *Weekley Homes*, 295 S.W.3d at 318.

Initially, Russell Marine contends that *Weekley Homes* does not apply because the information it seeks from the Ruiz Devices is the subject matter of the lawsuit. Russell Marine cites *Weekley Homes*'s acknowledgment that direct access to a responding party's electronic storage device is more likely to be allowed when a direct relationship exists between the device and the claims. *See id.* at 319. Effectively, Russell Marine asks us to recognize a plaintiff's *automatic* right to

directly access electronic storage devices when the claims are for misappropriation of trade secrets and there is an indication that trade secrets were taken electronically.

We do not read *Weekley Homes* as suggesting that examination of another party's electronic storage device is automatic in any type of case, including cases alleging misappropriation of trade secrets. Surrendering an electronic storage device for examination by another litigant is particularly intrusive no matter what claims are at issue. Importantly, the availability of electronic discovery is always subject to a balancing test. *In re State Farm Lloyds*, 520 S.W.3d 595, 599, 607-12 (Tex. 2017) (orig. proceeding) ("[A]ll discovery is subject to the proportionality overlay embedded in our discovery rules and inherent in the reasonableness standard to which our electronic-discovery rule is tethered.").[2] "Intrusive discovery measures— such as ordering direct access to an opponent's electronic storage device—require, at a minimum, that the benefits of the discovery measure outweigh the burden imposed upon the discovered party." *Weekley Homes*, 295 S.W.3d at 322. In any given case, consideration of the relevant interests may counsel against direct access to an electronic storage device because the production of documents from the device may prove adequate without a need to examine the device itself.

To be sure, as *Weekley Homes* observed, most courts have been amenable to permitting a party direct access to another party's electronic storage device when, as

---

[2] When considering whether to compel the production of electronic data, the trial court must balance: (1) the likely benefit of the requested discovery; (2) the needs of the case; (3) the amount in controversy; (4) the parties' resources; (5) the importance of the issues at stake in the litigation; (6) the importance of the proposed discovery in resolving the litigation; and (7) any other articulable factor bearing on proportionality. *State Farm Lloyds*, 520 S.W.3d at 607-12.

here, a direct relationship exists between the electronic storage device and the claim itself. *Id.* at 319 (discussing federal cases). This result makes sense when considering the balancing of relevant concerns as applied to trade secrets theft cases, but neither *Weekley Homes* nor the cases it discusses suggest that a misappropriation of trade secrets plaintiff has an automatic right to conduct a forensic examination of electronic storage devices. Notably, this court has held that *Weekley Homes* applies to mandamus review of an order compelling production of computer hard drives in a trade secrets theft action. *Methodist Primary Care Grp.*, 553 S.W.3d at 718-19. The First Court of Appeals has also applied *Weekley Homes* to a comparable dispute. *In re Pinnacle Eng'g, Inc.*, 405 S.W.3d 835, 842-44 (Tex. App.—Houston [1st Dist.] 2013, orig. proceeding). Accordingly, we hold that the *Weekley Homes* standards apply to this proceeding, and we turn to whether those standards are satisfied.

## C. WD Drive

We first consider the trial court's order compelling Ruiz to produce the WD Drive.

In support of its motion to compel, Russell Marine relied on the declaration of its expert, Ball. Ball stated that he examined forensic mirror images of Ruiz's Russell Marine computer and company phone to determine whether Ruiz used those devices to download Russell Marine data before he left the company's employ in August 2019. Ball determined that, in July 2019, Ruiz attached the WD Drive to his Russell Marine laptop via the USB port and copied numerous folders and gigabyte volumes of files, including estimates, bid data, contracts, proposals, cost data, communications, contacts, and other business and proprietary information relating

14

to Russell Marine's clients and projects. Between July 12 and July 15, 2019, Ruiz "double deleted" more than 700 files. According to Ball, the WD Drive was again connected to Ruiz's Russell Marine laptop on July 29, 2019.

In Ruiz's declaration filed in response to the motion to compel, he acknowledged having in his possession a Western Digital portable hard drive that matched the serial number of the WD Drive referenced by Ball. He said he had the WD Drive for years and stored both work and personal documents on it. He had not accessed the WD Drive "recently" because he claimed he did not "want to complicate the facts by accessing the WD Drive in any way that could alter the data on it."

Russell Marine complained in its motion to compel that many of the documents Ruiz downloaded are not included in Ruiz's production, citing specific documents by Bates number.

A party responding to an electronic discovery request must produce the data that is responsive to the request and "reasonably available to the responding party in the ordinary course of business" or object on grounds that the information cannot through reasonable efforts be retrieved or produced in the form requested. *See* Tex. R. Civ. P. 196.4; *Weekley Homes*, 295 S.W.3d at 315. In response to Russell Marine's requests for production seeking documents, data, or information copied or downloaded from Russell Marine's computers, Ruiz did not assert an objection that the requested information could not through reasonable efforts be retrieved or produced. He agreed to produce responsive documents and said that he had already done so. Yet, by Ruiz's account, he has not searched the WD Drive he admittedly

possesses to determine whether it has responsive data even though it contains "work" documents. While Ruiz may not have realized that he potentially had responsive documents on the WD Drive when he responded initially to the requests for production, once he determined that the WD Drive referenced by Ball was in his control, he had an ongoing duty to supplement his responses. Tex. R. Civ. P. 193.5. The record supports a finding that he has not complied with this obligation.

Based on the record, the trial court could have reasonably found that Ruiz defaulted at least in part on his obligation under Rule 196.4 to search for and produce responsive electronic data on the WD Drive; that his production has been inadequate; and that a further search of the WD Drive could recover relevant materials. *See Weekley Homes*, 295 S.W.3d at 317; *Methodist Primary Care Grp.*, 553 S.W.3d at 720; *In re Clark*, 345 S.W.3d 209, 212 (Tex. App.—Beaumont 2011, orig. proceeding) (per curiam).

An order compelling production of an electronic storage device must contain provisions to protect the responding party's privacy and privileges, as well as the confidentiality of non-responsive information. *See Weekley Homes*, 295 S.W.3d at 318-19; *Pinnacle*, 405 S.W.3d at 846. The trial court must also consider whether less intrusive means would suffice. *Weekley Homes*, 295 S.W.3d at 318-19; *Methodist Primary Care Grp.*, 553 S.W.3d at 720. Here, however, the challenged order does not contain any mechanism or protocol to protect Ruiz's privacy, privileges, or the confidentiality of non-responsive information. *Weekley Homes*, 295 S.W.3d at 318-19; *Pinnacle*, 405 S.W.3d at 846. Nor does it appear that the court considered whether less intrusive means will suffice short of producing the

16

WD Drive itself. *See Weekley Homes*, 295 S.W.3d at 316, 318-19, 321-22; *In re Wilcox*, No. 09-20-00271-CV, 2021 WL 1031141, at *4 (Tex. App.—Beaumont Mar. 18, 2021, orig. proceeding) (mem. op., per curiam) (court did not consider less intrusive measures); *Methodist Primary Care Grp.*, 553 S.W.3d at 720 (trial court did not consider whether less intrusive measures would suffice). When the order fails to address these interests, mandamus is appropriate. *Methodist Primary Care Grp.*, 553 S.W.3d at 721-23; *Pinnacle*, 405 S.W.3d at 846 (mandamus conditionally granted when order did not explain how expert would protect relators' privacy or privilege concerns); *Clark*, 345 S.W.3d at 213-14 (mandamus conditionally granted when order did not provide mechanism through which responding party could withhold from discovery any privileged or confidential information). The court ordered the parties' experts to work together to determine a forensic examination protocol to apply to the Ruiz Devices, but the record does not indicate that any agreement has been reached, and no joint protocol was provided to the court or described in the order.

We hold that the trial court abused its discretion in compelling Ruiz to turn over the WD Drive without providing any mechanism through which Ruiz can withhold from discovery any documents or information that is privileged or confidential and by failing to consider less intrusive means. *See* Tex. R. Civ. P. 196.4; *Weekley Homes*, 295 S.W.3d at 322; *Pinnacle*, 405 S.W.3d at 846.

## D.    USB Device

The trial court also compelled Ruiz to surrender the USB Device for forensic examination. Ruiz averred that he could not locate a USB device matching the serial

number of the USB referenced by Ball in his declaration; however, he confirmed that he previously saved to a USB drive the work documents he accumulated at Russell Marine.[3]  He gave that USB drive to his counsel.  It was his understanding that all the documents contained on that USB drive had been produced to Russell Marine.

The record contains no evidence that Ruiz has not reliably produced all the responsive documents contained on the USB drive in his counsel's possession.[4] Though Russell Marine has identified specific documents it contends are missing from Ruiz's production, those documents may be contained on the WD Drive. Notably, Ball did not state in his declaration that data was downloaded or copied to the USB Device from Ruiz's laptop; he said only that Ruiz attached the USB Device to his Russell Marine laptop on July 14, 2019.  This is in contrast to Ball's specific assertion that data was downloaded to the WD Drive from the laptop.

Under the present circumstances, the record does not show that Ruiz defaulted on his discovery obligations as to the USB Device.  *See Shipman*, 540 S.W.3d at 569.  Thus, we hold that the trial court abused its discretion in compelling Ruiz to surrender the USB Device for forensic examination.  Nothing about our ruling, however, precludes Russell Marine from seeking additional or further relief should it appear that Ruiz's production remains inadequate after Russell Marine receives responsive information, if any, contained on the WD Drive.

---

[3] Ruiz did not state that the USB drive contained personal information.

[4] The record does not clarify whether the USB drive Ruiz's counsel possesses is the same USB Device referenced by Ball in his declaration.

**E.      The 4X Industrial computers**

The order also states that: (1) if it is determined from a forensic examination that the Ruiz Devices were connected to any computers, then Ruiz, Thielen, and 4X Industrial shall produce any such computers within their possession, custody, or control within one business day after that determination is made; and (2) all non-privileged hard copies, together with electronic copies with all metadata intact, of any Russell Marine documents referred to in Plaintiffs' First Amended Petition shall be produced to counsel for Russell Marine within one business day from the date of completion of the forensic examination of the computers.

Relators contend these portions of the order are an abuse of discretion because Russell Marine failed to meet its burden under *Weekley Homes* as to these unidentified computers and documents; because the computers and documents referenced in the order are not responsive to any discovery request; and because the court's order makes searching for any such computers impossible.

Generally, mandamus does not issue for preliminary or conditional rulings. *In re Rojo Ent., LLC*, No. 13-21-00440-CV, 2022 WL 2135556, at *2 (Tex. App.—Corpus Christi June 14, 2022, orig. proceeding [mand. denied]) (mem. op.); *see also In re Walmart, Inc.*, 620 S.W.3d 851, 866-67 (Tex. App.—El Paso 2021, orig. proceeding [mand. denied]); *In re Watson*, 259 S.W.3d 390, 392-93 (Tex. App.—Eastland 2008, orig. proceeding); *In re Rodriguez*, 409 S.W.3d 178, 180-81 (Tex. App.—Beaumont 2013, orig. proceeding) (per curiam).  Russell Marine argues that relators' attack on the above sections of the order is premature because they are conditional.  We agree.  *See Walmart*, 620 S.W.3d at 866.  Moreover, given our

disposition with respect to the Ruiz Devices, we need not reach this part of relators' argument. This portion of the mandamus petition is denied.

## Conclusion

In sum, we hold that the trial court abused its discretion by compelling Ruiz to produce the WD Drive absent providing for mechanisms to protect any privileged or confidential data contained on that device and by failing to consider less intrusive means. We also hold that the trial court abused its discretion in compelling Ruiz to produce the USB Device because, as the record stands, Ruiz has not defaulted his discovery obligations as to that device. We otherwise deny the petition. We conditionally grant Ruiz's petition for writ of mandamus in part as explained above and direct the trial court to vacate its February 28, 2023 order to the extent that it compels Ruiz to produce the WD Drive and the USB Device for forensic examination. We are confident the trial court will act in accordance with this opinion

and the writ will issue only if the court fails to do so. Our March 20, 2023 stay order is lifted.


/s/     Kevin Jewell
                Justice


Panel consists of Justices Jewell, Poissant, and Wilson.

20